**Harve M. MUTTER**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. A. No. 74–251–A.**

United States District Court, W. D. Virginia, Abingdon Division.

Feb. 21, 1975.

W. Hobart Robinson, Abingdon, Va., for plaintiff.

Ronald D. Hodges, Asst. U. S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION and ORDER

TURK, Chief Judge.

Plaintiff has filed this action challenging the final decision of the Secretary of Health, Education and Welfare denying his claim for "black lung" benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S. C. § 901 et seq. Jurisdiction is pursuant to § 413(b) of the Act, 30 U.S.C. § 923 (b), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The sole issue to be decided by this court is whether the Secretary's decision is supported by "substantial evidence," and if it is, this court must affirm.

Plaintiff is now sixty-seven years old, (born May 5, 1907), and he has a fifth grade education. The evidence establishes that he worked for thirty-two years as a miner in the nation's underground coal mines. His primary duties in the mines consisted of being a cutting machine operator as well as a "boss man." He quit work in 1958 because of symptoms of respirable disease that included coughing, shortness of breath, inability to sleep, pain and exhaustion on exertion, dizziness and smothering. Mr. Mutter also stated that his condition has progressively worsened.

The medical evidence of record confirms that plaintiff suffers from a severe pulmonary disorder. As early as 1958, the medical reports show complaints of shortness of breath and weak-ness; however, the only x-ray taken during this period was essentially normal. Additional diagnoses were arteriosclerotic cardiovascular disease with auricular fibrillation and definite myocardial weakness.

On June 8, 1970, Dr. Dorris A. Cunningham, Roentgenologist, performed a chest examination and x-ray of the plaintiff. She reported that the chest was negative for pneumoconiosis and was close to normal with perhaps a little plueral thickening in the right lateral base. This x-ray was re-read on January 21, 1971, by Dr. L. Murphy, a certified reader of coal miner's chest x-rays. He reported that the film was acceptable and that there were small opacities both rounded and irregular. He classified it as category 0/0. An x-ray taken October 9, 1970, by Dr. L. J. Bristol, a certified reader of coal miner's x-rays, was also classified as 0/0.

On July 30, 1971, Dr. J. P. Sutherland, a certified reader of coal miner's chest x-rays and a specialist in occupational diseases, examined plaintiff. The x-ray showed that there were opacities in all six lung zones, category 2/2 p q r pneumoconiosis.

Pulmonary function studies were performed by Dr. R. O'Neill, a specialist in pulmonary diseases, on December 1, 1972. The doctor reported that cooperation and effort were good. His findings included a forced expiratory volume of 1 second duration of 3.32 liters and a maximum voluntary ventilation of 73.98 liters per minute. The $FEV_1$ is normal but the MVV is less than that specified in 20 C.F.R. § 410.490(b)(1)(ii).

Dr. Howard Scott examined the miner in February, 1973. He reported that plaintiff's pulmonary disease was not of sufficient magnitude to prevent him from performing his former duties in the mines; however, he conducted no clinical tests or studies which support his conclusion.

On June 12, 1973, Dr. Charles W. Nelson examined plaintiff. He reported that there was evidence of severe emphy-

sema and that the hilar areas were slightly full and irregular but not unduly suspicious. A study of the lung fields for fine detail showed in between linear markings with clusters of nodular fibrotic-like changes indicative of pneumoconiosis category 3p, 1–2q.

At the request of the Social Security Administration, Dr. John M. Dennis, a certified reader of coal miner's chest x-rays, and radiologist, re-read the x-ray films of June 8, 1970, October 9, 1970, July 30, 1971 and June 12, 1973. He reported that none of the x-rays were suggestive of pneumoconiosis, or pulmonale or enlarged heart abnormality.

Arterial blood gas studies were performed by Dr. A. S. Crawford on February 20, 1974. The doctor reported the $PCO_2$ as 32 mm Hg and the $PO_2$ as 79.7 mm Hg, which exceeds the values specified in the Appendix to Subpart D, 20 C.F.R. § 410.401 et seq.

Dr. H. Lee Bassham, radiologist, following an x-ray taken on February 20, 1974, reported that there was moderate increase in the anteroposterior thoracic dimension with mild flattening of the hemidiaphragm consistent with a mild diffuse pulmonary emphysema. Small rounded discrete pulmonary opacities principally 1 to 1.5 mms. in diameter were demonstrated in limited profusion throughout the right upper, middle and lower thirds and left upper and middle lung thirds. No coalescent masses were evident and there were no hilar "egg shell" calcifications demonstrated. The heart was not enlarged and there was no pleural calcification of thickening evident. The doctor concluded that these findings were consistent with category 1/0 p pneumoconiosis.

Subsequent to the decision of the Administrative Law Judge, but prior to the final determination of the Secretary, plaintiff's counsel received an x-ray report from the Mattie Williams Hospital. The x-ray revealed p type opacities in all zones of the lungs with a profusion of 1/1. No large opacities or pleural calcification were seen. However, there

was pleural thickening at the right base and a mild degree of pulmonary emphysema.

In order for plaintiff to establish his entitlement to benefits under the "Black Lung Act" he must show that he is a coal miner, that he is totally disabled due to pneumoconiosis, and that his pneumoconiosis arose out of employment in the nation's coal mines. 20 C.F.R. § 410.410(b). Subpart D of the Black Lung Benefits Regulations, 20 C.F.R. § 410.401 et seq., establishes the standards for determining whether a coal miner is totally disabled due to pneumoconiosis. Included in this Subpart are the statutory presumptions designed to aid the miner in proving his claim. *See* 20 C. F.R. §§ 410.414, 410.416, 410.490.

One of these presumptions is contained in the "interim adjudicatory rules" of 20 C.F.R. § 410.490. This section provides that:

[a] miner will be presumed to be disabled due to pneumoconiosis . . . if: (1) One of the following requirements is met:

(i) A chest roentgenogram (x-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.-428) . . . .

Section 410.428 provides that:

(a) A finding of the existence of pneumoconiosis . . . may be made . . . if:

(1) A chest roentgenogram (x-ray) establishes the existence of pneumoconiosis classified as category 1, 2, 3, A, B, or C . . .

A chest roentgenogram (x-ray) classified under any of the foregoing classifications as category O, including subcategories 0/–, 0/0, or 0/1 . . . is not accepted as evidence of pneumoconiosis.

(1/0 is evidence of pneumoconiosis).

While the Administrative Law Judge conceded that plaintiff suffers from simple pneumoconiosis, he nevertheless concluded that plaintiff's impair-

ment was minimal. In his opinion the Judge states:

> "The undersigned will concede, based on the lates x-ray as performed by Dr. Bassham, [category 1/0] that the individual does, in fact, have simple pneumoconiosis. However, the law further provides that the claimant's pneumoconiosis must prevent him from engaging in gainful work in the immediate area of his residence, requiring the skills and abilities comparable to those of any work in a mine or mines in which he was previously engaged with some regularity over a substantial period of time. It is quite evident in this case that based on medical reports and impressions that the pulmonary impairment is of minimal nature and would not preclude employment if he were otherwise capable of performing the same. The pulmonary function studies and the blood gas studies have values which exceed the minimums as required by law. Under such circumstances, there may not be a conclusion arrived at that the claimant does, in fact, have a pulmonary or respiratory impairment which is totally disabling. It is the opinion of the undersigned the claimant has not sustained his burden of proof."

Yet once pneumoconiosis is established, the miner is entitled to the 410.490(b) presumption that he is totally disabled. Therefore, the court is of the opinion that the Administrative Law Judge erred in not giving plaintiff the benefit of this presumption.

Once it is established that the miner is entitled to the § 410.490 presumption, the miner is considered disabled unless the Secretary produces evidence to rebut the presumption. The only way the presumption may be rebutted is if:

> (1) There is evidence that the individual is, in fact, doing his usual coal mine work or comparable and gainful work . . . or

> (2) Other evidence, including physical performance tests (where such tests are available and their administration is not contraindicated), establish that the individual is able to do his usual coal mine work or comparable and gainful work . . .

§ 410.490(c).

Not only has the Secretary failed to produce any evidence in rebuttal, it appears to the court that the Secretary could not rebut the presumption. A man of plaintiff's age (67), education (5th grade) and vocational experience (32 years as a coal miner) would have an almost impossible time in securing employment comparable to his former arduous coal mine employment (cutting machine operator).

Accordingly, since the Secretary has failed to rebut the § 410.490(b)(1)(i) presumption, this court has no choice but to reverse the Secretary's decision and award benefits. Therefore, this case is remanded to the Secretary for the payment of benefits to the plaintiff.