William GRAY, Plaintiff,

v.

**SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE, Defendant.**

No. 473012.

United States District Court,
E. D. Michigan, S. D.

Sept. 30, 1975.

**1304**

Alexander T. Ornstein, Pontiac, Mich., for plaintiff.

Ralph B. Guy, Jr., U. S. Atty., by Gwenn L. Carr, Asst. U. S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

KEITH, District Judge.

This is an action under 42 U.S.C. § 405(g) to review the final decision of the Secretary of Health, Education and Welfare denying the claimant-plaintiff's claim for "black lung" benefits under Title IV of the Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. §§ 921(a) and 922(a)(1).

The plaintiff, William Gray, was born in November 1914 and completed the ninth grade in school. He worked in the coal mines from 1937 until 1967 as a cutting machine operator, a loader, and a driller. At his hearing plaintiff testified that he left the coal mines in 1967 upon the advice of Dr. Herschel Bookhart (Tr. 7)[1] and from 1967 to 1969 he was employed finishing and cleaning machine parts. Thereafter he was employed as a machine operator and is currently employed as a drill press operator.

Plaintiff filed an application for benefits on June 26, 1972. The application was initially denied and on reconsideration by the Bureau of Disability Insurance of the Social Security Administration this denial was affirmed. Plaintiff requested a hearing on December 13, 1973. The administrative law judge, before whom plaintiff and a witness appeared, considered the case *de novo* and in an opinion dated May 17, 1974 found that plaintiff was not entitled to benefits. The administrative law judge's determination was approved by the Appeals Council on October 25, 1974 and thereby became the final decision of the Secretary of Health, Education and Welfare, hereinafter referred to as the Secretary. It is from this decision that plaintiff appeals.

The facts in this case are undisputed. The parties, however, disagree as to whether the Secretary's decision is supported by "substantial evidence" in compliance with 42 U.S.C. § 405(g). The plaintiff has moved for summary judgment reversing the Secretary's final order, and the Secretary has cross-moved for its affirmation. This court affirms.

Section 410.410(b) of the Social Security Administration Regulations

---

1. Plaintiff was unsure of the medical diagnosis made by Dr. Bookhart and no report was submitted by Dr. Bookhart at the hearing provided by the Department of Health, Education and Welfare.

(hereinafter the Regulations) (20 CFR 410.410(b)) sets out the criteria plaintiff in the instant case must meet to receive benefits:

> To establish entitlement to benefits on the basis of a coal miner's total disability due to pneumoconiosis, a claimant must submit the evidence necessary to establish: (1) That he is a coal miner, that he is totally disabled due to pneumoconiosis, and that his pneumoconiosis arose out of employment in the Nation's coal mines.

Pneumoconiosis is defined in 30 U.S.C. § 902(b) as a chronic dust disease of the lung arising out of employment in a coal mine.

 In enacting the Black Lung Benefit Act of 1972 Congress provided that the Secretary, to permit prompt processing of the backlog of claims, would provide interim disability and evaluation criteria designed to be less stringent than the permanent criteria. Mr. Gray's claim was filed before July 1, 1973, thereby entitling him to the benefit of having his claim measured by the interim criteria as described in 20 CFR 410.490.

The interim criteria entitles a claimant to a rebuttable presumption of total disability due to pneumoconiosis if one of two medical requirements is met. The first requirement is that a chest roentgenogram (X-ray) or biopsy establishes the existence of simple pneumoconiosis.

No evidence of the results of a biopsy was submitted. The results of chest X-rays of the plaintiff were submitted. A chest X-ray taken October 31, 1972 was interpreted by Roger Crum, M.D. as being completely negative. A similar conclusion was reached by V. San Jose, M.D. The only contrary finding was by Richard Rideout, M.D. who read a chest X-ray taken on December 29, 1972 as revealing category "1/0" small opacity, positive for simple pneumoconiosis. However, this same chest X-ray was interpreted by Philip Whittlesey, M.D. as being "completely negative" and this interpretation was confirmed by Kenneth Kattan, M.D. Both Dr. Whittlesey and Dr. Kattan are certified as readers of coal miner's chest X-rays by the National Institute of Occupational Safety and Health, Public Health Service.

The second requirement of the interim criteria is applicable to a miner employed for at least 15 years in underground or comparable coal mine employment and prescribes that ventilatory function studies establish the presence of a chronic respiratory or pulmonary disease as demonstrated by values which are equal to or less than the values specified in a table contained in this section and which could be expected to result in death, or lasted or could be expected to last for at least 12 consecutive months. There was no specific finding by the administrative law judge that the claimant had been employed as a miner for at least 15 years. There was, however, testimony to that effect. This court shall assume, without finding, therefore, that the second requirement is applicable to the plaintiff here.

Medical examinations of Mr. Gray performed on November 30, 1972 and May 1, 1974 reported his height at 66 inches. For claimants whose height is 67 inches or less to become eligible for the statutory presumption of total disability Section 410.490 of the Regulations requires that their one second forced expiratory volume ($FEV_1$) be equal to or less than 2.3 liters and that their maximum voluntary ventilation (MVV) be equal to or less than 92 liters per minute. Pulmonary function studies were performed on plaintiff November 30, 1972. The results reported plaintiff's $FEV_1$ was 2.7 liters and his MVV was 80.0 liters per minute. Although claimant's MVV was within the statutory limits, his $FEV_1$ was not. To be considered presumptively disabled *both* values must be equal to or less than the prescribed limits. The plaintiff thus

**1306**

does not qualify under either test set out by the interim adjudicatory regulations.

Plaintiff's counsel in his brief in support of his motion for summary judgment relies upon *Mutter v. Weinberg*, 391 F.Supp. 951 (W.D.Va.1975) in arguing that a finding of pneumoconiosis based on a reading of plaintiff's X-ray establishes a continuing presumption of pneumoconiosis. In *Mutter*, however, there was sufficient evidence to support a finding by the administrative law judge that the plaintiff in that case did have pneumoconiosis. The court in *Mutter* stated, at 954 that ". . . once pneumoconiosis is established the miner is entitled to the 410.490(b) presumption that he is totally disabled." It has not been established in this case that the plaintiff has pneumoconiosis. *Mutter* may, therefore, be distinguished.

Section 410.490 provides that where a miner does not establish total disability under the interim guidelines, he may establish total disability under the rules of the permanent criteria. We, therefore, turn to plaintiff's remaining alternatives.

■ Section 410.418 of the Regulations provides an irrebuttable presumption of total disability if a miner is suffering from a chronic dust disease of the lung which when diagnosed by chest roentgenogram yields one or more large opacities and would be classified as complicated pneumoconiosis. Plaintiff here, however, has not introduced evidence sufficient to support a finding of simple pneumoconiosis. A presumption of total disability based on a finding of complicated pneumoconiosis, thus, cannot arise.

■ ■ Section 410.414 of the Regulations incorporates Sections 410.412, 410.422 and 410.426 and outlines various ways in which a claimant may prove the existence of pneumoconiosis. The results of a chest roentgenogram or of a biopsy may be submitted. If there is evidence of a totally disabling chronic respiratory or pulmonary impairment, the claimant is entitled to a statutory presumption that pneumoconiosis exists. Alternatively "other relevant evidence" including the results of medical tests such as blood gas studies, electrocardiogram, pulmonary function studies or physical performance tests, and any medical history, evidence submitted by the claimant's physician, and his spouse's affidavits may be submitted to support a finding of total disability due to pneumoconiosis.

As stated above, the interpretations of the results of the chest X-rays taken of plaintiff varied, but the weight of the medical evidence indicates the absence of pneumoconiosis.

In Section 410.426 of the Regulations a table of criteria for pulmonary function studies is set out. If a claimant's MVV or MBC and $FEV_1$ are equal to or less than the values specified in that table, pneumoconiosis shall be found disabling. Plaintiff's height was found to be 66 inches. To meet the criteria set out in that table, therefore, the MVV or MBC must be 61 liters per minute and the $FEV_1$ must be equal to or less than 1.6 liters per minute. Since the results of the pulmonary function studies performed on plaintiff indicate his MVV was 80.00 liters per minute and his $FEV_1$ was 2.77, plaintiff does not qualify for the presumption outlined in § 410.414.

As set forth in Section 410.414(c) "other relevant evidence" including the results of blood gas studies and of an electrocardiogram was submitted. In addition, a disability certificate from plaintiff's doctor was offered and there was testimony from the plaintiff and from his daughter. Under §§ 410.414(c) and 410.426(d) if this evidence establishes the existence of disabling pneumoconiosis, claimant may still qualify for benefits despite the fact that he has failed to qualify under the other alternatives open to him.

The required values for the results of blood gas studies are set out in the appendix to 20 CFR Subpart D—Total Disability or Death Due to Pneumoco-

niosis. Section (1) of the appendix requires that values must be less than or equal to the values in the table. Where the pCO2 is 30 or below, the pO2 must be equal to or less than 65. The results of blood gas studies performed on Mr. Gray at Pontiac Osteopathic Hospital show a pCO2 of 28.5 and a pO2 of 70.5.

An EKG interpretation prepared by Dr. V. San Jose revealed none of the complications set out in section (2) of the appendix. It was noted that the plaintiff has early left ventricular hypertrophy on EKG. This, condition, however, was diagnosed by Dr. San Jose as being cardiac in origin rather than related to plaintiff's lungs.

Plaintiff testified (Tr. 17) that Dr. L. D. Soverinsky was his physician. A disability certificate stating that plaintiff had been under the care of Dr. Soverinsky since February 10, 1970 was submitted. No clinical or laboratory diagnoses or findings accompanied the certificate and there was no indication that Dr. Soverinsky had formed an opinion regarding the plaintiff's condition.

As mentioned previously, plaintiff additionally testified (Tr. 7) that he was advised by Dr. Herschel Bookhart, a Kentucky doctor, to leave the coal mines. However, no medical diagnosis was received from Dr. Bookhart.

█ █ It must be concluded, therefore, that the other relevant medical evidence submitted fails to meet the requirements of §§ 410.414 and 410.426 and cannot support a finding of total disability.

Additional evidence offered included the testimony of plaintiff's daughter (Tr. 26) that plaintiff, while working in the coal mines, was unable to assist in doing any work around the house and frequently had to rest after coming home from work. There was also testimony from the plaintiff (Tr. 9, 13, 14) that his symptoms included weakness, shortness of breath, and coughing grayish phlegm. The above testimony and the findings of Dr. Rideout, which were contrary to other X-ray interpretations, constitute the only evidence offered in support of plaintiff's claim.

Although plaintiff may display some of the symptoms of pneumoconiosis, the weight of the medical evidence in this case tends to negate the existence of the disease.

It is not the function of this court to try this case *de novo. Blalock v. Richardson,* 483 F.2d 773 (4th Cir. 1972); *Baker v. Secretary of Health, Education and Welfare,* 383 F.Supp 1095 (W.D.Va. 1974). This Court must view the record as a whole and decide whether he decision of the Secretary is supported by substantial evidence and if it is, this Court must affirm. For the reasons stated above this Court finds that the Secretary's decision to deny benefits to the plaintiff in this case was indeed supported by substantial evidence. Accordingly, summary judgment in favor of the defendant is granted, and it is so Ordered.