**William R. McLANE, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

Civ. A. No. 75–269–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

July 8, 1977.

S. Strother Smith, Abingdon, Va., for plaintiff.

Michael A. Rhine, Asst. U.S. Atty., Norfolk, Va., for defendant.

## MEMORANDUM OPINION AND JUDGMENT ORDER

CLARKE, District Judge.

This case arises under Part B, Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended. 30 U.S.C. §§ 901, et seq. The Act establishes a program for the payment of benefits to living miners who are totally disabled due to pneumoconiosis arising out of coal mine employment and to the dependents of miners who died due to pneumoconiosis, or who were totally disabled due to pneumoconiosis at the time of their death. The Department of Health, Education and Welfare is empowered to promulgate regulations for the administration and determination of disability under this Act and to adjudicate claims and pay lifetime benefits to miners who were disabled by pneumoconiosis on or before June 30, 1973, and to the dependents of miners who died from pneumoconiosis on or before that date.

Plaintiff applied for benefits without aid of counsel on December 22, 1972. After two administrative denials, he was afforded a hearing on August 30, 1974, at which time the Administrative Law Judge found that the claimant was not totally disabled within the meaning of the Act. Thereafter plaintiff secured the services of an attorney who collected evidence from additional medical examinations and tests and submitted it with notice of appeal to the Appeals Council. The Appeals Council upheld the decision of the Administrative Law Judge without appearing to have considered the additional evidence submitted by plaintiff's counsel. Plaintiff then appealed the decision of the Appeals Council to this Court, which by its Order of December 3, 1975, remanded the case to the Secretary of Health, Education and Welfare for further consideration in light of the additional submitted evidence and any other evidence the Department might deem proper to collect.

The case went back to the Administrative Law Judge for a de novo hearing on September 7, 1976, where the additional evidence was considered together with new testimony and further medical evidence.

The Administrative Law Judge made a recommended decision that plaintiff was not entitled to benefits under the Act on February 3, 1977, and the Appeals Council affirmed and adopted this decision on March 24, 1977.

The case is once more before this Court for review of this final decision of the Secretary of Health, Education and Welfare denying the plaintiff's claim as a miner for Black Lung benefits under the Coal Mine Health and Safety Act. 30 U.S.C. § 923(b) incorporates by reference sections of the Social Security Act, 42 U.S.C. § 405(g)–(h), which provide that the Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the case for a rehearing, and that the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.

For the reasons given hereinafter, this Court finds that the Secretary's findings were made in compliance with his regulations and are supported by substantial evidence and, therefore, affirms the decision of the Secretary denying plaintiff's claim for benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended.

Plaintiff was born on October 4, 1901, and was first employed in the coal mines when he was sixteen or seventeen years old. He continued this employment sporadically for a total number of eighteen years until 1948 at which time he began to work primarily as a plumber. In 1964, plaintiff went on medication for shortness of breath and continued to work as a plumber until his retirement at age 70 in 1971. There was some evidence that plaintiff smoked a pipe for twenty years until he was forced to quit by his breathing difficulties in 1964. He testified that due to his shortness of breath problems he has restricted his activities and avoids most exertion including extensive driving, heavy lifting, walking short distances or climbing stairs.

The medical evidence of plaintiff's condition considered by the Secretary includes the following:

### X-Rays

1973—read as showing no evidence of pneumoconiosis by two "B" readers.

1974—read as showing positive evidence of pneumoconiosis by a "B" reader. Reread in 1976 by a "B" reader for the Government and a "B" reader for plaintiff as showing no evidence of the disease.

### Ventilatory Test Reports

1973—March $FEV_1$ 2.72; MVV 95
May $FEV_1$ 2.92; MVV 93
Summarized by two physicians (Dr. Mann TR 89, 199; Dr. Ray TR 173) as being within normal limits for a person of plaintiff's age.

1974—$FEV_1$ 1.46; MVV 55.44
$PCO_2$ 34 & $PO_2$ 61 (blood gas studies)

1976—$FEV_1$ 1.19; MVV 50
$FEV_1$ 1.57; MVV 53 after use of an aerosol bronchodilator.

There are three different sets of criteria set up as permanent guidelines for determining whether a claimant is totally disabled due to pneumoconiosis contracted due to work in coal mines. 20 CFR § 410.418; 20 CFR §§ 410.422 to 410.426; 20 CFR § 410.414(b). In addition, a less stringent set of guidelines called Interim Adjudicatory Rules were promulgated by the Secretary at the behest of Congress to allow the vigorous and prompt processing of the large backlog of claims generated by the Act of 1969. 20 CFR § 410.490. Plaintiff makes his claim of entitlement solely under these less stringent guidelines provided for claims filed before July 1, 1973.

20 CFR § 410.490 provides that a miner of plaintiff's height may be presumed to be totally disabled due to pneumoconiosis and therefore entitled to benefits if (1) an x-ray establishes the existence of pneumoconiosis, or (2) the miner has at least ten years of coal mine employment and a $FEV_1$ reading of 2.6 or less and an MVV reading of 104 or less. An appendix to the section substitutes blood gas study figures in the event no $FEV_1$ and MVV readings are available. Relevant to this case are the figures $PCO_2$ 34 and $PO_2$ 61 from which a presumption of disability arises.

As seen by the medical evidence above, there was only one x-ray reading out of five that indicated the existence of pneumoconiosis in plaintiff's lungs. This was the first reading made of the 1974 x-ray. Plaintiff claims that this reading which was performed by a "B" reader was conclusive and by law should have been final. *Puckett v. Mathews*, 420 F.Supp. 364, 365 (W.D.Va. 1976); *Stewart v. Mathews*, 412 F.Supp. 235 (W.D.Va.1975); 42 CFR 37.52. However, this Court notes that when there is conflicting evidence, it is up to the Secretary to resolve the conflicts by procuring additional evidence. *Welsh v. Weinberger*, 407 F.Supp. 1043 (D.Md.1975); 10 CFR § 410.-240(a). In this case, the 1973 x-ray and tests showed no evidence of pneumoconiosis. This evidence clearly contradicted the first reading of the 1974 x-ray and justified the Secretary in seeking another reading of the 1974 x-ray by a "B" reader. Plaintiff, too, had the 1974 x-ray reread by a "B" reader. The result was that both rereadings found no positive evidence of pneumoconiosis.

With regard to the second alternative or ventilatory testing standards of the Interim Adjudicatory Rules, it is admitted that plaintiff worked in the mines more than ten years, but plaintiff's $FEV_1$ and MVV readings for 1973, the year in which plaintiff must prove his total disability, do not fall within the testing criteria. The criteria require a $FEV_1$ reading of 2.6 or less *and* an MVV reading of 104 or less. Plaintiff's 1973 $FEV_1$ reading measured 2.72 in March and 2.92 in May and his MVV reading measured 95 and 93, respectively. Clearly, plaintiff's $FEV_1$ reading is above the regulation criteria. Although plaintiff's MVV reading measured within the range of the criteria, it is not enough to raise the presumption of total disability provided by § 410.490 because both $FEV_1$ and MVV readings must fall within the stated criteria. *Campbell v. Weinberger*, 402 F.Supp. 1147, 1151 (N.D.W.Va.1975); *Gray v. Secretary of Health, Education and Welfare*, 402 F.Supp. 1303, 1305 (E.D.Mich. 1975); 20 CFR § 410.490(b)(1)(ii). In addition, Doctors Robert F. Mann and Edward

S. Ray testified that the 1973 ventilatory testing results as a whole showed that plaintiff's breathing condition in 1973 was within normal limits for a man his age. When plaintiff's attorney confronted Dr. Mann with the fact that the § 410.490 table of MVV readings indicated that anything less than MVV 104 for a man of plaintiff's height was not within normal range, Dr. Mann explained that the determination of abnormality depends on a large number of factors which must be considered as a whole and that a deviation of a single factor such as the MVV reading in this case would not rebut a conclusion of normalcy based on consideration of all the factors as a whole.

■ The Court notes that plaintiff's $FEV_1$ and MVV readings for 1974 and 1976 were well within the criteria fixed by § 410.490 and that 1974 blood gas studies of $PCO_2$ 34 and $PO_2$ 61 fall within the criteria set by the appendix to the regulation. Such evidence is admissible as probative to a determination whether pneumoconiosis existed on June 30, 1973, the date on which plaintiff must prove he was totally disabled by the disease in order to qualify for lifetime benefits under this regulation. Such evidence is not conclusive. *Talley v. Mathews*, 550 F.2d 911 (4th Cir. 1977); *Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976); *Buckles v. Secretary of Health, Education and Welfare*, 420 F.Supp. 481 (W.D.Va. 1975). In this case, Dr. Edward S. Ray testified that the difference between the "normal" 1973 test results and "abnormal" 1974 test results was probably due to the condition of asthma and bronchitis suffered by the plaintiff in 1974. In addition, Dr. Ray gave his opinion by letter that upon reviewing plaintiff's 1976 ventilatory and blood gas study reports, he concluded that plaintiff suffers from emphysema and bronchitis with moderate impairment of lung function but that he does not have a severe impairment of lung function. (TR. 288, letter dated Jan. 6, 1977).

■ This Court is of the opinion that, in the face of the 1973 reports which indicate plaintiff was within normal limits of breathing capacity at the time he seeks to prove himself totally disabled and the subsequent reports which indicate that plaintiff now suffers from bronchitis and emphysema of moderate impairment, the Secretary's decision to deny plaintiff benefits for total disability due to pneumoconiosis under 20 CFR § 410.490 was substantially supported by the evidence.

■ As noted hereinbefore, there are three additional and more stringent alternative sets of criteria under which plaintiff may establish the requisite disability for Black Lung benefits. Plaintiff did not attempt to prove by argument or brief that he complied with any of these criteria and we find that the Secretary's decision to deny benefits thereunder is supported by substantial evidence.

20 CFR § 410.418 provides an irrebuttable presumption of disability due to pneumoconiosis if evidence of complicated pneumoconiosis is submitted by x-ray, autopsy or biopsy. No such evidence was introduced in this case.

20 CFR §§ 410.422 to 410.426 provide for the establishment of disability due to pneumoconiosis from a determination of all the facts of the case including (1) medical criteria of $FEV_1$ 1.8 and MVV 66 for a man of plaintiff's height and x-rays showing certain cellular formations indicative of pneumoconiosis, and (2) age, work experience, education, etc. Section 410.426 provides that medical impairments other than pneumoconiosis may not be considered. As indicated above, none of the x-rays taken of plaintiff in 1973 or 1974 evidenced the existence of the disease, the 1973 ventilatory reports indicated that plaintiff's condition was within normal limits, and the 1974 and 1976 ventilatory reports which had measures within the criteria of this regulation were the result of the condition of bronchitis, asthma and emphysema. In addition, plaintiff has not worked in the mines since 1948, he did not develop breathing difficulties until 1964, at which time he went on medication and continued to work until his retirement as a plumber at age 70 and he smoked a pipe for a number of years.

20 CFR § 410.414(b) provides a presumption of disability due to pneumoconiosis if evidence of a totally disabling respiratory or pulmonary impairment plus fifteen years of coal mine employment is submitted. *Phillips v. Mathews*, 555 F.2d 1182 (4th Cir. 1977). As indicated above, there is evidence that plaintiff worked in the mines for at least fifteen years but insufficient evidence for either 1973, 1974 or 1976 that plaintiff is totally disabled due to respiratory or pulmonary impairment. (1973 reports and Dr. Ray's testimony and letter concluding no severe impairment of lung function.)

The decision of the Secretary of Health, Education and Welfare to deny plaintiff benefits for total disability due to pneumoconiosis contracted from employment in the coal mines under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. §§ 901, *et seq.*, is AFFIRMED.