Charles O. WRIGHT, Plaintiff,

v.

F. David MATHEWS, Secretary of Health, Education and Welfare, Defendant.

No. C-75 89.

United States District Court, N. D. Ohio, E. D.

Dec. 4, 1975.

956

Thomas J. Sicuro, Kane, Bangus & Sicuro, Ravenna, Ohio, for plaintiff.

Richard J. French, Asst. U. S. Atty., Cleveland, Ohio, Marvin E. Gavin, Regional Atty., Dept. of Health, Education and Welfare, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

This is an action pursuant to 30 U.S.C. § 923(b) which incorporates by reference 42 U.S.C. § 405(g) for judicial review of the final decision of the Secretary of Health, Education and Welfare denying the plaintiff benefits under Title IV of the Federal Coal Mine Health and Safety Act, both as originally enacted in 1969 and as amended in 1972, 30 U.S.C. §§ 901 et seq. (hereinafter, the Act). This Act provides for the payment of benefits both to living coal miners who are totally disabled due to pneumoconiosis resulting from their coal mining employment and to the survivors of coal miners who were likewise disabled at the time of their deaths. The challenged finding of the Secretary in the instant case is that although the plaintiff does have pneumoconiosis, it is not totally disabling within the meaning of the Act.

The case comes before the court now on defendant's motion for summary judgment. In exercising its reviewing authority under 42 U.S.C. § 405(g), the court recognizes that

> the function of the District Court is only to determine whether the findings and decision of the Secretary are supported by substantial evidence.

*Ingram v. Richardson*, 471 F.2d 1268, 1271 (6th Cir. 1972).

The plaintiff is a 55 year old man who was employed in the coal mining industry in Kentucky from 1941 to 1966 except for various periods of layoffs. He first worked as a loader, a position which involved extensive heavy lifting, and for approximately the last ten years of this period as a driller and shooter, a position which required skill in the use of dynamite and involved long periods of stooping and standing. The administrative law judge, whose opinion was adopted by the Secretary, found that all of the plaintiff's work during this period had been in "dirty, dusty and pollutant atmosphere" and, until the last three years of his mining tenure, had involved "prolonged standing, walking and heavy lifting."

The plaintiff apparently began experiencing some respiratory problems in 1948 and at that time began consulting a Dr. Dameron. Later during his mining employment, he consulted a Dr. Flannery. Medical records were not available from either of these doctors, and the plaintiff could not recall what medications they had prescribed. He did state that he was told he had "miner's asthma." He also testified that during the last few years of his mining employment he was given "company work," work which required less exertion.

In 1966, the plaintiff quit his mining employment in Kentucky to take a job with the Highway Department of the State of Ohio, a position which he continues to hold. The job involves mowing grass in the summer and operating a "high-lift" in the winter. The administrative judge found that

this forty hour per week job involves "prolonged sitting, light lifting and occasional walking and standing."

On September 28, 1970, claimant filed an application for benefits under the Act. On July 23, 1971, the Bureau of Disability Insurance denied the claim, based on the opinion of Dr. Thomas Scarlett whose medical opinion was that the plaintiff did not have pneumoconiosis. On August 2, 1973, the Bureau, having re-examined the claim under the provisions of the Act as it had been amended in 1972, again denied the claim for lack of medical evidence of disabling pneumoconiosis.

At the request of the plaintiff a hearing was then afforded him on his claim on June 18, 1974. At this hearing, the testimony of the plaintiff was received as well as reports from five physicians. The report of Dr. Thomas Scarlett, a board-certified radiologist who examined the plaintiff on July 7, 1971, was that chest x-rays revealed no evidence of pneumoconiosis. The report of Dr. Robert A. Beggs, a specialist in internal medicine and pulmonary diseases who administered ventilatory function tests on June 13, 1973, was that the plaintiff's "flow rates were in the normal range," although certain results "suggested a mild degree of airway obstruction." The report of Dr. Nathan Chang, a board-certified surgeon who examined the plaintiff on August 7, 1973, concluded that the plaintiff was totally incapacitated "as a result of Black Lung disease." Dr. Chang did not specify the nature of his examination or the basis for his conclusion but apparently did have available the reports of two Kentucky physicians, Dr. J. I. Sutherland and Dr. Paul Odom. Dr. Sutherland, a general practitioner with a practice in occupational medicine who x-rayed the plaintiff on July 26, 1973, reported "opacities in all six lung zones." Dr. Odom, a general practitioner who conducted pulmonary function studies of the plaintiff on July 25, 1973, indicated that he was unable to evaluate the plaintiff's condition because the plaintiff's effort on the tests had been poor.

On the basis of this mixed medical evidence plus the plaintiff's testimony as to his difficulty in working under enclosed, dusty conditions, the administrative law judge found in a decision of September 13, 1974 that the plaintiff did have pneumoconiosis. But since the medical evidence was not such as to establish that the plaintiff had complicated pneumoconiosis and therefore not such as to entitle him to an irrebuttable presumption that his condition was totally disabling, the judge then considered the evidence on the issue of disability. The regulations specifically provide:

. . . [M]edical considerations alone shall not justify a finding that an individual is (or was) totally disabled if other evidence rebuts such a finding, e. g., the individual is (or was) engaged in comparable and gainful work. 20 C.F.R. § 410.-424(a).

Pneumoconiosis which constitutes neither an impairment [as detailed in other regulations] nor the medical equivalent thereof, shall nevertheless be found totally disabling if because of the severity of such impairment, the miner is (or was) not only unable to do his previous coal mine work, but also cannot (or could not), considering his age, his education, and work experience, engage in any other kind of comparable and gainful work available to him in the immediate area of his residence . . . 20 C.F.R. § 410.426(a).

The administrative judge accordingly considered the facts that the plaintiff, a 55 year old man with a third grade education who testified that he could read but could not write, had been employed continuously by the State of Ohio since quitting mining work. He concluded that this rebutted the presumption of disability raised by the favorable medical testimony. The Secretary adopted this opinion on December 4, 1973.

The sole contention of the plaintiff in seeking review is that his work with the Highway Department of the State of Ohio is not "comparable." The administrative law judge considered this contention at some length and found to the contrary:

Next, the undersigned concludes that claimant's present job requires skills and abilities comparable to those required in

his mining work. Both jobs would require some technical knowledge in the use of machines and tools. Neither involved supervisory responsibilities. Both would involve work under some hazardous conditions. Claimant's work as a loader would be more strenuous than his present job and his work as a driller and shooter would require some skills (blasting with dynamite) not needed in his present job, but the undersigned does not believe such are determinate factors. One cannot escape the conclusion that the intellectual and educational requirements of both jobs are comparable. Further, with the exception of strength and repetitive stooping, bending and kneeling, the physical requirements of the two jobs are not vastly dissimilar. The undersigned concludes that credible evidence rebuts the presumption of disability under the interim rules.

Opinion of Administrative Law Judge Franklin D. Carroll of September 13, 1974, at 10–11.

■ While this court recognizes that the choice of the term "comparable and gainful employment" implies a standard which is higher than the "substantial gainful" standard used in regular Social Security disability determinations, see Arms v. Gardner, 353 F.2d 197 (6th Cir. 1965), the opinion of Judge Carroll, which the Secretary adopted, evidences an understanding of this. He was not simply satisfied that the plaintiff had a job, but compared the responsibilities which the plaintiff had had as a miner with those in his present position. On the basis of this examination, he concluded that the positions were comparable.

The finding of Judge Carroll on the issue of comparability of employment recently has been given the further support of the findings in *Hall v. Weinberger*, Case No. C74–284 (E.D.Ky.1975), aff'd by order, 527 F.2d 647 (6th Cir. 1975). In that case, the plaintiff, a former coal miner, also sought benefits under the Act. He argued that his duties as a school janitor were not comparable employment to that of a miner. Judge Hermansdorfer in *Hall* affirmed the Secretary's findings that sixteen years of continuous employment as a janitor constituted comparable employment. In the instant case, the plaintiff has been continuously employed in his present job for over nine years. He did not testify that he had difficulty in performing his duties. Rather, he merely maintains that the duties of his present employment are not comparable to his coal mining work.

■ The comparability requirement is part of the 1972 amendment of the Act. The Congressional concern appeared to be that eligibility determination based on the criteria used for regular Social Security disability benefits were improper given the general economic conditions and particular non-mining employment opportunities in regions where ex-miners are likely to reside.[1] In providing that current employment capability be comparable to rebut the presumption of disability, the Congress cannot be thought to require a line by line comparison of job descriptions of the plaintiff's former mining duties and his present duties. The standard is comparability not identity.[2]

---

1. In the Senate Report on the 1972 amendments, there is the following discussion of the former standard:

    The Committee believes that experience in the administration of the black lung benefit provisions to date reflects the need to modify the definition of disability applied in the adjudication of claims under these provisions. The Committee makes no judgment on whether the test in Title II of the Social Security Act, "inability to engage in any substantial gainful activity," is an appropriate definition of application to the total universe of workers in the Nation. But, it is unrealistic when applied to coal miners, if it results

in the denial of claims of miners who for medical reasons can no longer be expected to work in the mines and for whom there is no, too often, other realistic employment opportunity, or for whom the only opportunity for employment may be at wages far less than the (sic) would have earned had they been able to continue to work in their usual jobs. 1972 U.S.Code Congressional and Administrative News at pp. 2320–21.

2. The criteria of identity of mining employment contained in the Senate version of the 1972 Act was abandoned in the Conference Committee report. See 1972 U.S.Code Congressional and Administrative News at p. 2339.

Congress was interested in eligibility criteria based on realistic employment opportunity. Judge Carroll appears to have made his judgment on such criteria, finding that the plaintiff's nine years of employment as laborer rebuts any present presumption of disability.

There is substantial evidence to support the Secretary's decision and this court is not empowered to substitute its opinion for that of the Secretary under these circumstances. The decision of the Secretary is therefore affirmed.

IT IS SO ORDERED.

