Thomas STEWART

v.

David MATHEWS, Secretary of Health, Education and Welfare.

Civ. A. No. 75–0146.

United States District Court
W. D. Virginia,
Abingdon Division.

Dec. 19, 1975.

Robert Austin Vinyard, Smith, Robinson & Vinyard, Abingdon, Va., for plaintiff.

E. Montgomery Tucker, Asst. U. S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

TURK, Chief Judge.

Plaintiff has filed this action challenging the final action of the Secretary of Health, Education and Welfare denying his claim for "black lung" benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq.* Jurisdiction of this court is pursuant to § 413(b) of the Act, 30 U.S.C. § 923(b), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The issues to be decided by this court are whether the Secretary's decision is supported by "substantial evidence" or whether the plaintiff has met his burden of proof established under the Act.

The evidence developed below establishes that the plaintiff, Thomas Stewart, was born on December 25, 1908, and subsequently completed the second grade in school. Plaintiff's work records indicate a history of over 27 years in the Nation's coal mines. He was last employed in the mines in 1970 and has not worked since that time. Mr. Stewart spent most of his mining career as a coal loader, drilling machine operator, and roofer. Plaintiff's work in the mines involved exposure to significant quantities of coal dust. Mr. Stewart now alleges that as a result of his mining experience, he had developed a breathing impairment of a severity sufficient to entitle him to benefits under the Act.

The court has determined that the crux of the controversy in this case concerns the significance to be attached to the roentgenographic (x-ray) readings and re-readings developed during the course of the administrative adjudication. Plaintiff contends that the x-ray evidence is sufficient to entitle him to the interim presumption of total disability due to pneumoconiosis as established under 20 C.F.R. § 410.490(b). The Secretary determined that the preponderance of the evidence weighs against such a finding.

The earliest x-ray evidence to be considered consists of a report by Dr. William C. Barr dated October 27, 1970. In that report, Dr. Barr noted absolutely no evidence of pneumoconiosis. However, Dr. W. L. Murphy later described Dr. Barr's film as unreadable due to poor contrast. (TR 82). In a report dated November 11, 1970, Dr. R. M. Dodrill noted "minimal nonspecific fibrosis without evidence of acute or exudative pathology." (TR 84). Dr. Dodrill also described a somewhat enlarged cardiothoracic ratio. Dr. Dodrill's film was re-read as completely negative by Dr. Paul Wheeler. A film dated November 8, 1971 was read as negative for pneumoconiosis by Dr. Barr.

Dr. Paul van Lith conducted a pulmonary function study on February 24, 1973. Dr. van Lith considered the results to be indicative of normal ventilatory function. However, as a result of a general medical examination conducted on April 16, 1973, Dr. R. Sewell concluded that Mr. Stewart "could not do coal mine work due to shortness of breath . . . ." (TR 100). On June 4, 1973, a second pulmonary function study was conducted by a Dr. Alderman. Dr. Alderman's measurements revealed significantly reduced MVV and $FEV_1$ values. However, the study could not serve as a basis for entitlement since it was not accompanied by the appropriate spirometric tracings. (See 20 C.F.R. § 410.430).

On July 25, 1973, an x-ray was read by Dr. P. L. Odom as indicative of pneumoconiosis 1/1 p. A pulmonary function study by Dr. Odom revealed slightly reduced $FEV_1$ and MVV values. Dr. Odom's x-ray film was re-read upon the request of the Administrative Law Judge by Dr. George Fischer who also found pneumoconiosis 1/1 p. The Law Judge then had the film read by Dr. Leonard Bristol who found no evidence of pneumoconiosis. Dr. Fred Booth summarized his treatment of plaintiff from January 27, 1974 to February 5, 1974 for shortness of breath and chest pain. Dr. Booth noted minimal fibrosis and questionable bronchitis in the right lung root. Dr. Shiv Navani interpreted yet another film with report dated February 26, 1974. Dr. Navani noted pneumoconiosis, category 1/0 p. Upon the Law Judge's request, Dr. Fischer re-read Dr. Navani's film. Dr. Fischer again noted pneumoconiosis 1/1 p. Apparently, the Law Judge then requested Dr. Bristol to re-read the film. The report that purportedly describes Dr. Bristol's re-reading notes the film date as July 25, 1973 (the date of Dr. Odom's film), thus adding to the confusion in the x-ray record.

Dr. Ian Shine submitted the last medical report to be considered on May 14, 1974. Dr. Shine described the results of a pulmonary function study as normal. His x-ray interpretation revealed bilateral hylar and perihylar calcifications. Once again, Dr. Fischer's re-reading was sought. Dr. Fischer again noted pneumoconiosis, 1/1 p. Dr. Bristol was requested to re-read the film shortly after Dr. Fischer's re-readings were completed. Dr. Bristol noted no evidence of pneumoconiosis.

In addition to the medical evidence, plaintiff presented his own testimony and that of his wife in support of his claim. Both Mr. and Mrs. Stewart described the miner's long standing breathing difficulties and subjective complaints. They also described Mr. Stewart's inability to do even light work around the house.

In an opinion eventually adopted as the final decision by the Secretary, the Administrative Law Judge produced an opinion denying Mr. Stewart's entitlement to benefits. In resolving the conflict in the x-ray evidence, the Administrative Law Judge relied on the re-readings of Dr. Bristol over those readings of Doctors Odom, Navani,

and Fischer. In an attempt to justify the Law Judge's reliance on Dr. Bristol, the Secretary points out, by way of brief, that Dr. Bristol is classified as a certified "B" reader of x-ray films. The Secretary cites 42 C.F.R. § 37.52 which provides that interpretations of "B" readers will be considered "final" and further, that an original reading by a "B" reader will preclude any necessity for additional readings. However, the court has determined that such reasoning does not justify the Administrative Law Judge's treatment of this case.

The court takes judicial notice of the fact that, at the time of his reading of Mr. Stewart's chest film, Dr. Navani was classified as a "B" reader. Thus, under the regulatory provision cited by the Secretary, Dr. Navani's initial reading should have been considered "final". Nevertheless, the Law Judge sought to have the film re-read two additional times. The first re-reading confirmed the finding of simple pneumoconiosis. Dr. Bristol's later negative re-reading was adopted by the Law Judge. Notwithstanding the fact that under the Secretary's interpretation of the regulations, Dr. Navani's original positive reading should have been considered final, the Administrative Law Judge's emphasis on Dr. Bristol's later re-readings is still questionable. Certainly, if the Law Judge continues to seek re-readings *ad infinitum,* he will eventually come upon a conservative reader who will find the films to be negative. However, in the process, the Law Judge renders the non-adversary administrative adjudication of claims a meaningless exercise. Indeed, the repeated re-reading of films is exactly the form of administrative "one upsmanship" discouraged by Congress as it enacted the 1972 amendments to the Black Lung Act. [Sen.Rep.No.92–743, 92d Cong., 2d Session, (1972) U.S.Code Cong. & Admin. News 1972, p. 2305.]. The court finds the Secretary's total reliance on the re-readings of Dr. Bristol to be unwarranted, improper, and not supported by "substantial evidence."

The medical evidence and lay testimony in this case establish that Mr. Stewart suf-fered from his respiratory impairment many months prior to the termination of the Secretary's jurisdiction over "black lung" claims which occurred on July 1, 1973. The x-ray evidence of record clearly establishes Mr. Stewart's entitlement to the presumption of total disability due to pneumoconiosis established under 20 C.F.R. § 410.-490(b)(1)(i). Since Mr. Stewart had ceased all employment as early as 1970, the Secretary is unable to rebut this presumption with the medical evidence of record. [See 20 C.F.R. § 410.490(c)].

The court finds it unnecessary to require the Secretary to consider additional evidence of pneumoconiosis provided by the plaintiff subsequent to the final decision of the Secretary. Upon this court's findings that the Secretary's final decision is not supported by substantial evidence and that the plaintiff has met his burden of proof, the decision of the Secretary is reversed and the case remanded for the determination of proper benefits.