Clarence HENSON, Plaintiff-Appellant,

v.

Caspar WEINBERGER, Secretary of Health, Education, and Welfare, Defendant-Appellee.

No. 75–1221.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1975.

Decided Jan. 25, 1977.

---

Jack N. Van Stone, Evansville, Ind., for plaintiff-appellant.

John E. Hirschman, U. S. Atty., John L. Hudgins, Asst. U. S. Atty., Indianapolis, Ind., for defendant-appellee.

Before FAIRCHILD, Chief judge, CUMMINGS, Circuit Judge, and GRANT, Senior District Judge.*

FAIRCHILD, Chief Judge.

Appellant, Clarence Henson, was administratively denied benefits provided in the Black Lung Act, 30 U.S.C. § 901 *et seq.* The district court affirmed the decision of the Secretary of Health, Education, and Welfare. Henson appealed.

Mr. Henson has worked in coal mines for twenty-nine years. He last worked in the mines in 1965. Allegedly he was unable to continue with that work or comparable work. Subsequently, Mr. Henson performed less strenuous work as a supervisor for a concrete block company. He was unable to continue at this job and therefore retired in 1973. On July 11, 1970, he had applied for the benefits provided by the Federal Coal Mine Health Safety Act. His claim was denied in 1971, reexamined under the Act as amended in 1972, and again denied without a hearing. Administrative

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

hearing and agency review followed, but his claim was again denied.

The district court, after reviewing the pleadings and the transcript of the administrative hearing, found that the agency decision was supported by substantial evidence in the record as a whole and was not arbitrary, capricious, nor contrary to law. We are limited to the same scope of review. 30 U.S.C. § 923(b), 42 U.S.C. § 405(g).

The appellant argues that the Administrative Law Judge and the Secretary failed properly to consider a statutory presumption. Specifically, he contends that 30 U.S.C. § 921(c)(4), entitles him to a presumption of total disability due to pneumoconiosis which has not been rebutted.

The purposes of the Act, as amended, and the presumptions it provides, are described in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 6–12, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). Henson's claim, filed in 1970, falls into the class adjudicated by the Secretary of Health, Education, and Welfare and paid by the United States. In *Turner*, the Supreme Court upheld the validity of the statutory presumptions against challenges by the Operators, who are required to pay part or all of the claims filed on or after July 1, 1973.

Under 30 U.S.C. § 902(f), the term "total disability" has the meaning given it by regulations of the Secretary of Health, Education, and Welfare. Total disability is defined by the Secretary in 20 C.F.R. § 410.412:

(a) A miner shall be considered totally disabled due to pneumoconiosis if:

(1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time (that is, "comparable and gainful work"; see §§ 410.424–410.426); and

(2) His impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than 12 months.

\* \* \* \* \* \*

The Act provides statutory presumptions, applicable to claims filed on or before December 31, 1973. 30 U.S.C. § 921(c). § 921(c)(3) provides an irrebuttable presumption of total disability due to pneumoconiosis where an X-ray is positive by specified diagnostic standards. Henson's X-ray does not fulfill those standards and it is conceded he was not entitled to a (c)(3) presumption. Having been employed for more than fifteen years in underground coal mines, the existence of a presumption in his case is determined by (c)(4), as follows:

(4) if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

Thus Henson was entitled to the (c)(4) presumption "if other evidence [than the chest X-ray] demonstrates the existence of a totally disabling respiratory or pulmonary impairment."

If Henson is entitled to the (c)(4) presumption, the only evidence which might seemingly rebut it is the chest X-ray, which does not establish the presence of pneumoconiosis. A negative chest X-ray, however, is insufficient rebuttal as a matter of law, *Turner*, p. 12, 96 S.Ct. 2882, since § 923(b) provides that no claim shall be denied solely on the basis of a chest X-ray.

Henson's doctor, Dr. Peters, testified that he had a large number of patients who were coal miners, and a fair number of them had pneumoconiosis. Henson had been his patient since about 1958, and had progressive difficulty with shortness of breath. In 1965, Dr. Peters advised Henson of his opinion that Henson could not do the work in an underground coal mine. Dr. Peters thought Henson had disabling pneumoconiosis. He agreed that the X-rays are not positive, but said they showed some questionable modularity. He had other patients with similar X-rays, and five who died were found on autopsy to have had pneumoconiosis.

Henson testified that from 1965 to 1973 he performed supervisory duties for a concrete block company. In 1973 he had to quit because he couldn't walk from one end of the building to the other because of shortness of breath. There was no testimony directly contradicting the foregoing, nor any that Henson was able at any time after 1965 to engage in gainful work comparable to his coal mine work. So far, it seems clear that the evidence established a respiratory or pulmonary impairment totally disabling Henson from coal mine or comparable work; that Henson was entitled to the (c)(4) presumption; and that it was unrebutted.

The Administrative Law Judge relied on certain ventilatory tests and a regulation of the Secretary, 20 C.F.R. § 410.490, (b)(1)(ii) "Interim adjudicatory rules for certain Part B claims filed by a miner before July 1, 1973 . . . ." The rule relied on awards a rebuttable presumption if an applicant achieves certain scores in ventilatory tests. Under the rule the presence of a chronic respiratory or pulmonary disease could be established if one of Henson's height showed an $FEV_1$ equal to or less than 2.3 liters and an MVV equal to or less than 92 liters. The record shows that $FEV_1$ (first second forced expiratory volume or first second timed vital capacity) is by definition the maximal amount of air which can be expired in the first second from the full respiratory position, and that MVV, maximal voluntary ventilation, is the maximal amount of air which can be moved in and out of the lungs in a given period of time. Tests of Henson showed an MVV of 80. Being less than 92, this score established one element specified in the regulation. Henson's $FEV_1$, however, was 2.44 liters. Being greater than 2.3, the second required element was not established.

■ The regulation was promulgated pursuant to 30 U.S.C. § 921(b), directing the Secretary to adopt regulations to prescribe standards for determining whether a miner is totally disabled due to pneumoconiosis and to implement the amendments. We deem it clear that the regulation could not lawfully alter the substance of the statutory (c)(4) presumption.

There was no expert testimony that a miner whose test values are above one or both of the criteria specified cannot have a totally disabling respiratory or pulmonary impairment, and therefore cannot enjoy the (c)(4) presumption.

■ Indeed, as we read the regulations, 20 C.F.R. 410, 414(b) contemplates that the existence of a totally disabling chronic respiratory or pulmonary impairment may be determined on the basis of "other evidence," and the presumption accordingly triggered; and § 410.422(a) and (c) contemplate that such determination is to be made "from all the facts of that case." The testimony of Mr. Henson and Dr. Peters make out a *prima facie* case of a respiratory or pulmonary impairment, totally disabling

from coal mine or comparable work. We think that although ventilatory test scores equal to or less than those specified in 20 C.F.R. 410.490(b)(1)(ii) would have the same effect, triggering a favorable presumption, failure to achieve such scores does not establish that Henson is not entitled to the presumption. As the matter was put by the Sixth Circuit, "The regulation which establishes the levels required for a finding of disabling pneumoconiosis on the basis of a ventilatory study does not purport to provide proof of the nonexistence of pneumoconiosis." *Ansel v. Weinberger*, 529 F.2d 304, 310 (6th Cir. 1976).

Since Henson was entitled to the (c)(4) presumption on the basis of Dr. Peters' and Henson's testimony, and it was not rebutted, the Secretary was required to award benefits.

We think our analysis of this case is consistent with the intent of Congress strongly evidenced in Senate Report No. 92–743 (1972), 92d Cong., 2d Sess. 2 U.S. Cong. & Admin.News, 1972, p. 2305 ff. The Committee made clear the desire that evidence submitted by a miner's physician be considered, p. 2318, and that claimants, particularly after 15 years or more of work in a coal mine, be given the benefit of the doubt, p. 2315.

The judgment of the district court is reversed, and the cause remanded with directions to enter judgment reversing the decision of the Secretary and determining that Henson is entitled to payment of benefits.