Bramson **BLANKENSHIP**, Plaintiff,

v.

Joseph R. **CALIFANO**, Jr., Secretary of Health, Education and Welfare of the United States, Defendant.

No. 77 C 2691.

United States District Court, N. D. Illinois, E. D.

Oct. 5, 1978.

Karen L. Hamity, James P. Chapman, Chicago, Ill., for plaintiff.

Beverly A. Susler, Asst. U. S. Atty., Chicago, Ill., for defendant.

MEMORANDUM

LEIGHTON, District Judge.

This is a complaint to review a decision of the Secretary of Health, Education and Welfare that denied plaintiff's application for black lung benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901, *et seq.* Jurisdiction of this action exists pursuant to 30 U.S.C. § 923(b); review of the Secretary's decision proceeds under the general guidelines of 42 U.S.C. § 405(g); cross-motions

for summary judgment are before the court. The issue presented is whether denial of black lung benefits to the plaintiff was arbitrary, capricious, or unsupported by substantial evidence.[1] This issue arises from the following facts.

## I.

Plaintiff worked approximately fifteen to twenty years in the coal mines of Virginia, and Kentucky, performing various types of jobs such as loading coal, helping to run cut machines, cleaning up after cutting machines, drilling and shooting coal. His job functions necessarily entailed inhalation of coal dust. As a consequence, when he returned home at night, his teeth and skin were blackened with coal dust. While working in the mines, plaintiff often experienced coughing spells during which he expectorated blackened mucous, and suffered from shortwindedness. His breathing worsened with the passage of time.

In 1969, two years after plaintiff quit working in the mines, he moved to Chicago, Illinois and was employed by the Wells Manufacturing Company. There he performed a variety of jobs connected with the manufacture of auto and truck parts until he was laid off in 1974 for poor attendance. Although his work did not involve heavy duty, plaintiff again experienced breathing difficulties which resulted in his having to stop work and being hospitalized. Plaintiff has not worked since his 1974 layoff.

On March 5, 1973, plaintiff filed an application for benefits under the Federal Coal Mine Health and Safety Act of 1969, claiming that he suffered from a disability, described by him as chest pains and shortness of breath, all of which he said were the results of his having worked eighteen years in coal mines. The application was denied on March 13, 1974. On reconsideration, the application was once again denied. Then, a hearing was conducted before an administrative law judge who denied plaintiff's claim, after making the following findings:

1. That the claimant filed an application for Black Lung Benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended on March 5, 1973.

2. That the claimant was employed in the Nation's coal mines for a period of more than ten years.

3. That the claimant fails to meet the interim criteria established for miners filing before July 1, 1973 in order to establish total disability.

4. That the claimant continued to work full-time in comparable and gainful employment until March 1974.

5. That the claimant was not totally disabled by pneumoconiosis at any time prior to July 1, 1973, when the Social Security Administration's jurisdiction over Black Lung claims expired; nor did he have a totally disabling chronic respiratory or pulmonary impairment which could give rise to the presumption of total disability due to pneumoconiosis at any time prior to July 1, 1973.

Plaintiff then took his claim to the Appeals Council which affirmed the administrative law judge's decision. In doing so, it made the following findings:

1. The claimant filed an application for black lung benefits under the Federal Coal Mine Health and Safety Act, as amended, on March 5, 1973.

2. The claimant was employed in the Nation's underground coal mines for a period of at least 15 years.

3. Filing a claim for workmen's compensation benefits under the applicable State law is futile.

4. The preponderance of the X-ray interpretations does not establish that the claimant has pneumoconiosis.

5. The acceptable pulmonary function studies produced values which exceed the regulatory criteria for establishing an impaired ventilatory capacity.

6. The credible evidence, including X-ray interpretations, pulmonary functions

---

1. See *Henson v. Weinberger*, 548 F.2d 695, 697 (7th Cir. 1977); *Owens v. Mathews*, 435 F.Supp. 200 (N.D.Ind.1977); *Litwak v. Secretary of Health, Ed. & Welfare*, 430 F.Supp. 586 (E.D.Pa.1977); 42 U.S.C. § 405(g); 30 U.S.C. § 923(b).

study results, and other relevant evidence of record does not demonstrate significantly impaired lung function as a result of a chronic respiratory or pulmonary disease.

7. The claimant is not totally disabled as a result of pneumoconiosis; nor does he have a totally disabling chronic respiratory or pulmonary impairment which could give rise to the presumption of total disability due to pneumoconiosis.

## II.

Defendant has filed with the court a certified copy of the administrative record of the proceedings before the agency. Based on this record, the pleadings, and briefs, plaintiff has moved for summary judgment on the ground that the administrative decision is not supported by substantial evidence; and that the record shows he proved he has a totally disabling respiratory impairment which arose out of his employment in the nation's coal mines. Defendant has also moved for summary judgment on the ground that the decision is not arbitrary or capricious, and that all of the agency's findings are supported by substantial evidence.

## III.

### A.

Congress enacted the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901, *et seq.* after finding that there are coal miners living today who are totally disabled[2] by pneumoconiosis, black lung disease, which they contracted from their employment in the nation's coal mines. The Act is designed "to ensure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis." 30 U.S.C. § 901. Pneumoconiosis is defined in the Act as a "chronic dust disease of the lung arising out of employment in a coal mine." 30 U.S.C. § 902(b).

Relevant regulations further define pneumoconiosis:

(b) *"Pneumoconiosis defined."* "Pneumoconiosis" means:

(1) A chronic dust disease of the lung arising out of employment in the Nation's coal mines, and includes coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis, or silicotuberculosis, arising out of such employment. For purposes of this subpart, the term also includes the following conditions that may be the basis for application of the statutory presumption of disability or death due to pneumoconiosis under the circumstances prescribed in section 411(c) of the Act:

(2) Any other chronic respiratory or pulmonary impairment when the conditions are met for the application of the presumption described in § 410.414(b) or § 410.454(b), and

(3) Any respirable disease when the conditions are met for the application of the presumption described in § 410.462. The provisions for determining that a miner is or was totally disabled due to pneumoconiosis or its sequelae are included in §§ 410.410–410.430 and in the Appendix following this Subpart D. The provisions for determining that a miner's death was due to pneumoconiosis are included in §§ 410.450–410.462. Certain re-

---

**2.** Total disability is defined in 30 U.S.C. § 902(f) which provides:

(f) The term "total disability" has the meaning given it by regulations of the Secretary of Health, Education, and Welfare, except that such regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time. Such regulations shall not provide more restrictive criteria than those applicable under section 423(d) of Title 42.

The definition is further supplemented by relevant regulations promulgated pursuant to the Congressional authorization found in 30 U.S.C. § 921(a), (b). See 20 C.F.R. §§ 410.412, 410.426 (1977).

lated provisions of general application are included in §§ 410.470–410.476. 20 C.F.R. § 410.401(b) (1977).

Due to the difficulty of proving pneumoconiosis,[3] the Federal Coal Mine Health and Safety Act of 1969 was amended in 1972. One of the purposes of that amendment was to

[r]elax the often insurmountable burden of proving eligibility by prohibiting a denial of claims based solely on a negative chest reoentgenogram and by presuming that miners with 15 years experience who are disabled by a respiratory or pulmonary impairment are disabled by pneumoconiosis. S.Rep.No.92–743, 92d Cong., 2d Sess., U.S.Code Cong. & Admin.News 1972, pp. 2305, 2306.

The statutory presumption[4] is contained in 30 U.S.C. § 921(c)(4), which provides that if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttal presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine.

This section is supplemented by 20 C.F.R. § 410.414(b) (1977):

*Presumption relating to respiratory or pulmonary impairment.* (1) Even though the existence of pneumoconiosis is not established as provided in paragraph (a) of this section, if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment (see §§ 410.412, 410.422, and 410.426), it may be presumed, in the absence of evidence to the contrary (see subparagraph (2) of this paragraph), that a miner is totally disabled due to pneumoconiosis, or that a miner was totally disabled due to pneumoconiosis at the time of his death.

The other evidence alluded to in this section is defined in 20 C.F.R. § 410.414(c) (1977):

*Other relevant evidence.* Even though the existence of pneumoconiosis is not established as provided in paragraph (a) or (b) of this section, a finding of total disability due to pneumoconiosis may be made if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment and that such impairment arose out of employment in a coal mine. As used in this paragraph, the term "other relevant evidence" includes medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the miner's physician, his spouse's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the individual's physical condition, and other supportive materials.

The statutory presumption may be rebutted "only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in con-

---

3. Pneumoconiosis may be found by using the following diagnostic techniques:

(1) chest x-rays; (2) biopsies; and (3) autopsies. 20 C.F.R. § 410.414(a) (1977).

4. The statutory presumption follows the ruling in *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976).

nection with, employment in a coal mine." 30 U.S.C. § 921(c)(4); 20 C.F.R. § 410.-414(b)(2) (1977). Claims for benefits cannot be denied solely on the basis of a chest x-ray. 30 U.S.C. § 923(b). Determination of whether a claimant is eligible for benefits, using the statutory presumption analysis, must be made on a case by case basis. 20 C.F.R. § 410.422(c) (1977).

In this review, the court is confined to the question whether the agency decision is supported by substantial evidence in the record as a whole and is not arbitrary, capricious, nor contrary to law. Substantial evidence, as defined in *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and applied in a black lung case by Judge Will of this court, means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Holt v. Califano,* No. 76 C 3296 (N.D.Ill. filed Oct. 31, 1977).

### B.

In deciding plaintiff's case, the administrative law judge focused on the presumption of pneumoconiosis by x-ray, biopsy, autopsy or ventilatory tests under interim regulations contained in 20 C.F.R. § 410.490 *et seq.* (1977), but ignored plaintiff's right to the statutory presumption of disability under 30 U.S.C. § 921(c)(4). The judge concluded that the x-ray and ventilatory function tests did not raise the presumption contained in the regulations. Then, apparently assuming, *en arguendo,* that plaintiff was entitled to the presumption under the regulations contained in 20 C.F.R. § 410.490 *et seq.* (1977), the administrative law judge proceeded to find that the presumption was rebutted by a showing that plaintiff had engaged in comparable gainful employment[5] with Wells Manufacturing, a finding which was reversed by the Appeals Council. Thus, on this court's examination of the record, it is evident that the decision of the administrative law judge totally ignored plaintiff's right to a statutory presumption of disability under 30 U.S.C. § 921(c)(4) and 20 C.F.R. §§ 410.412–410.462 (1977) and plaintiff's "other evidence" of respiratory dysfunction. This is true despite the fact that the interim regulations applied by the administrative judge specifically allowed plaintiff to establish his eligibility under these provisions. See 20 C.F.R. § 410.490(e) (1977).

The Appeals Council affirmed the decision. While conceding that four of plaintiff's initial x-rays were read as showing pneumoconiosis, the Council gave greater probative value to re-readings[6] of these x-rays by Class B x-ray readers[7] which resulted, *inter alia,* in a finding that two of the x-rays were negative and two were unreadable. The Council also found that ventilatory function tests failed to show that claimant met the interim criteria provided in the regulations. However, it wholly failed to consider evidence going to and establishing the presumption contained in 30 U.S.C. § 921(c)(4), just as the administrative law judge had done.

### C.

▇ For these reasons, the decision of the Secretary must be reversed because his agency failed to consider evidence which entitled plaintiff to the presumption of disability contained in 30 U.S.C. § 921(c)(4). The evidence showed, and the agency found, that

---

5. This term is defined to imply a standard which is higher than the substantial gainful *standard used in Social Security disability de*terminations. See *Wright v. Mathews,* 412 F.Supp. 955, 958 (N.D. Ohio 1975).

6. This practice of submitting x-rays to re-readings has been criticized by other courts. In *Stewart v. Mathews,* 412 F.Supp. 235 (W.D.Va. 1975), the court recognized that solicitations of re-readings *ad infinitum* will eventually result in a negative finding by a conservative reader.

However, in the process the non-adversary administrative adjudication of claims is rendered meaningless. "Indeed, the repeated re-readings of films is exactly the form of administrative 'one-upmanship' discouraged by Congress as it enacted the 1972 amendments to the Black Lung Act." *Id.* at 238.

7. A Class B reader is defined in 42 C.F.R. § 37.51(b) (1977) as being highly qualified type of x-ray interpreter.

[T]he claimant was born on August 7, 1924, and has a work history of at least 15 years of coal mine employment ending in 1967. From 1969 through March 1974, he worked as an inspector and general laborer at a manufacturing company.

During the period the claimant worked in the coal mines, he loaded coal, worked behind a cutting machine shoveling dust and drilling coal, cleaned up behind a joy loader machine, and set jacks for a coal mole machine. Most of his work was in low coal requiring crouching and/or crawling. He worked at the face of the mine which was extremely dusty.

On April 8, 1974, Dr. Craft examined plaintiff and made the following observations which are contained in the record:

Physical examination of the lungs reveals a moderate diminution in breath sounds with bilateral rales. The heart sounds were distant; no murmurs, thrills or heaves were present. Inspection of the fingers revealed minimal clubbing, and there was no evidence of ankle edema.

Chest x-ray taken today reveals round, fibronodular opacities throughout all six lung zones compatible with diagnosis of pneumoconiosis category 2/3P. Chest x-ray also reveals moderate chronic pulmonary emphysema and moderate peribronchial fibrosis.

In my medical opinion, this man has definite pneumoconiosis which is easily substantiated by chest x-ray. The attached pulmonary function studies reveal a significant breathing impairment. When these findings are taken into perspective, it would be impossible for this man to perform gainful employment in a dusty environment due to the severity of his pneumoconiosis.

Thus it was Dr. Craft's conclusion that plaintiff suffered from a chronic respiratory impairment and was totally disabled.

A letter from Dr. Charles Laster, which was made part of the record, reveals the following:

I am writing this letter in regards to the above named patient who has been under my care since 7–28–75 at which time he complained of shortness of breath and wheezing. He gave a history of working in coal mines and having "Black Lung." Chest X-Rays showed fibrotic changes and pulmonary function studies revealed mild to moderate obstructive changes diagnostic of Emphysema.

It was my impression that he had Chronic Obstructive Lung Disease and/or "Black Lung". The latter diagnosis is difficult to establish without biopsy or autopsy findings, however, his clinical and lab findings are consitent [sic] with the diagnosis.

Because of the nature of his illness which requires long term therapy, he was treated with antibiotics, expectorants, bronchodilators and inhalation therapy.

His prognosis is fair to poor and later Chest X-Rays have revealed an increase in the fibrotic changes in his lungs. He should not engage in work similar to coal mining.

In regards to the etiology of his condition, I feel that his working in the coal mines were [sic] sufficient to cause his condition or at least initiate the fibrotic changes.

Despite intensive medical therapy, there has been a gradual deterioration in his condition as reflected by his X-Ray changes and increasing shortness of breath.

In addition to these letters, there were four x-rays initially read by four different doctors which were interpreted as being positive evidence of pneumoconiosis. Finally, there was testimony of the plaintiff that he expectorated blackened mucous, that he experienced breathing difficulties, that his shortwindedness problem had become progressively worse, that he had difficulty climbing the stairs to his house, that he had progressive paroxysmal nocturnal dyspnea, that he often uses Primatene spray to facilitate breathing, and that he felt unable to perform work similar to that done in the mines. This evidence, taken as a whole, entitled plaintiff to the statutory presumption of disability and the findings of the

agency which are to the contrary are not supported by substantial evidence.

Thus, it appears that plaintiff was capriciously deprived of his statutory presumption; the decision of the Secretary denying him black lung benefits is unsupported by substantial evidence. In *Henson v. Weinberger,* 548 F.2d 695 (7th Cir. 1977), the Seventh Circuit dealt with a case similar to this one. It held that where the testimony of an attending physician and the claimant established the claimant's right to the statutory presumption of impairment, ventilatory test scores equal to or less than those established by 20 C.F.R. § 410.-490(b)(1)(ii) (1977), the regulation relied on by the Secretary in this case, cannot be used to establish proof of the nonexistence of pneumoconiosis. In *Ansel v. Weinberger,* 529 F.2d 304 (6th Cir. 1975), the Sixth Circuit held that the rebuttable presumption contained in 30 U.S.C. § 921(c)(4) cannot be rebutted by negative x-rays.

The Secretary contends that the presumption was rebutted by evidence which established that Claude Ansel did not have pneumoconiosis. He relies on the negative findings of three radiologists who examined X-rays and the pulmonary studies. It is obvious that the negative X-rays may not be relied upon to rebut the presumption of Section 921(c)(4). If he had been able to produce a positive X-ray, there would have been no need to invoke the presumption. The very existence of a negative X-ray is a prerequisite to reliance upon the presumption of pneumoconiosis as established by other evidence. Furthermore, under the 1972 amendment, negative X-ray evidence may not be the sole basis for a denial of benefits. 30 U.S.C. § 923(b). Nor do we believe the presumption of Section 921(c)(4) can be rebutted by showing that pneumoconiosis was not established by pulmonary function studies. The regulation which establishes the levels required for a finding of disabling pneumoconiosis on the basis of a ventilatory study does not purport to provide proof of the nonexistence of pneumoconiosis. *Id.* at 309–310.

The Sixth Circuit held that in order to rebut the presumption, once established, the Secretary was under a duty to proffer a medical opinion that plaintiff did not have pneumoconiosis. This record is devoid of such an opinion.

### IV.

This being the case, it is indisputable that the Secretary's decision failed to consider adequately, if at all, plaintiff's entitlement to the statutory presumption contained in 30 U.S.C. § 921(c)(4). Having reached this conclusion, this court now finds that plaintiff is entitled to benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended. See *Henson v. Weinberger,* 548 F.2d 695 (7th Cir. 1977); *Ansel v. Weinberger,* 529 F.2d 304 (6th Cir. 1975). Therefore, his motion for summary judgment is granted; defendant's is denied; the case is remanded to the agency for a determination of benefits under the Act. An appropriate judgment order consistent with this memorandum may be presented for approval and entry.

So ordered.