**Marie L. FELTHAGER,**
**Plaintiff-Appellant,**

**v.**

**Caspar W. WEINBERGER, Secretary of Health, Education and Welfare, Defendant-Appellee.**

No. 75–1183.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 10, 1975.

Decided Feb. 6, 1976.

Rehearing Denied Feb. 20, 1976.

James R. Collins, Trinidad, Colo., for plaintiff-appellant.

Barbara L. Herwig, Washington, D. C. (Rex E. Lee, Asst. Atty. Gen., James L. Treece, U. S. Atty., Ronald R. Glancz and Larry R. O'Neal, Dept. of Justice, on the brief), for defendant-appellee.

Before BREITENSTEIN, HILL and BARRETT, Circuit Judges.

HILL, Circuit Judge.

This is another of the many recent cases in which the survivor of a deceased coal miner has sought judicial review of the denial of "Black Lung Benefits" provided in 30 U.S.C. § 901 *et seq.* Appellant, Marie L. Felthager, is the widow of Joseph Felthager who died in 1965 after working over 44 years in underground coal mines. A hearing before an administrative law judge resulted in a determination that appellant was entitled to benefits. On its own motion, the Appeals Council of the Social Security Administration reviewed the claim and denied benefits. This became the decision of the Secretary and appellant properly sought judicial review under 42 U.S.C. § 405(g). The district court found the Secretary's decision was supported by substantial evidence and granted summary judgment in favor of appellee.

Appellant meets all the personal eligibility requirements for a widow seeking benefits as stated in 20 C.F.R. § 410.210. The issues in this appeal concern whether she has proved the additional requirement that the deceased miner either (a) died of pneumoconiosis (black lung) or (b) was totally disabled due to pneumoconiosis at the time of his death. Benefits were denied on the grounds she had proved neither alternative. If the Secretary's decision is supported by substantial evidence, we must affirm the judgment. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

Proving death or total disability due to pneumoconiosis is not easy. To aid claimants with their difficult burden of proof, several presumptions have been included in the statutes and regulations. In this case, however, we are primarily concerned with only one of these presumptions. Appellant could not produce the medical evidence necessary to raise any of the presumptions contained in 20 C.F.R. §§ 410.418, 410.458, and 410.490. Neither could she establish the presumption of death due to pneumoconiosis under 20 C.F.R. § 410.462 because the miner's death was not "medically ascribed" to a chronic lung disease.[1] If appellant is to prevail it must be under the standards of 20 C.F.R. § 410.414 or § 410.454.

Section 410.414(b) provides:

(1) Even though the existence of pneumoconiosis is not established as provided in paragraph (a) of this section [x-ray, biopsy or autopsy], if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment . . ., it may be presumed, in the absence of evidence to the contrary . . ., that a miner is totally disabled due to pneumoconiosis at the time of his death.

Section 410.454(b) raises the same presumption relative to finding the miner's death was due to pneumoconiosis.[2] Both sections provide the presumption "may be rebutted only if it is established that the miner did not have pneumoconiosis."

■ The Secretary found the evidence established that the deceased did not have pneumoconiosis and that he did not have any totally disabling respiratory impairment. We doubt whether there is substantial evidence establishing that the deceased did not have pneumoconiosis. However, we must affirm the judgment on the basis of the evidence of total disability. Because appellant has not shown the deceased was totally disabled due to chronic respiratory impairment, the presumption that the impairment was pneumoconiosis does not arise.

Appellant's husband died on July 28, 1965, one day before his sixty-first birthday. While working at his job as an assistant foreman at the Allen Mine in Weston, Colorado, the deceased became so exhausted from shortness of breath that he had to sit down. He sat on the shuttle car tracks and was run over by the car. He died a few hours later. The death certificate listed the immediate cause of death as a compound fracture of the left leg, fractured pelvis, and pulmonary edema.

There is no doubt the deceased miner suffered from severe respiratory impairment, beginning about 15 years before his death and growing continuously worse, especially during the last five years of his life. There was evidence from the deceased's wife and 12 of his co-workers that he suffered extreme breathing difficulties and coughed a lot; occasionally he would cough up phlegm with black streaks in it. Four doctors who had examined the deceased during his life had all concluded he had severe respiratory impairment which was possibly black lung or pneumoconiosis. One of them stated the deceased had black lung "without question."

■ The evidence the deceased did not have pneumoconiosis came from two doctors who examined an apparently inconclusive autopsy and found "there is no anatomic evidence of blacklung." One of them added *"From this information,*

---

1. Appellant argues the deceased's respirable disease should be considered the "proximate cause" of the deceased's accidental death. We do not believe § 410.462 allows speculation in problems of remote causation. When respirable disease is not an immediate cause of death, a claimant must establish an entitlement to benefits under alternative provisions of the regulations. *See Farmer v. Weinberger,* 519 F.2d 627 (6th Cir. 1975).

2. The presumption applies when the miner has been employed in the Nation's underground coal mines for 15 or more years. 20 C.F.R. §§ 410.414(b)(3) and 410.454(b)(3). That is not in issue in this case since it is undisputed the deceased miner had worked in coal mines at least 44 years.

this patient did not have 'black lung' disease" (emphasis added). Neither doctor for the Secretary based his opinion on actual examination of the deceased. As we stated before, we do not decide the issue, but we doubt whether this could be considered substantial evidence establishing the nonexistence of pneumoconiosis. *See Martin v. Secretary of Department of Health, Education & Welfare*, 492 F.2d 905 (4th Cir. 1974); *Landess v. Weinberger*, 490 F.2d 1187 (8th Cir. 1974).

Concerning the issue of total disability the evidence shows the deceased continued to work as an assistant mine foreman until his death. He had held the same position for 15 years, but had previously done all types of mine work. Although his duties consisted primarily of walking around the mine supervising other miners, he could do that only with great difficulty. He could not walk from one work site to another to check on the crews without stopping to rest and catch his breath. On one occasion he collapsed in the mine because he could not get his breath. On another occasion he passed out while attempting to mow his lawn. He had been advised by his doctor and his family to quit working in the mines. In spite of this, he kept working regularly because of financial need and because of his desire to reap full retirement benefits by working until the usual retirement age. At the time of his death there were no Social Security benefits for black lung disability.

Whether this evidence establishes total disability must be determined under the definition contained in 30 U.S.C. § 902(f).

The term "total disability" has the meaning given it by regulations of the Secretary of Health, Education and Welfare, except that such regulations shall provide that *a miner shall be considered totally disabled when pneumoconiosis prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time. . . .* (emphasis added)

The Secretary's regulations in 20 C.F.R. § 410.412(b) are in substantially identical terms.

Appellant would phrase the issue before us as follows: Can a miner be "totally disabled due to pneumoconiosis" as defined in the Act and regulations if he was employed in the mines at the time of his death? Appellant's question must be answered affirmatively, but that does not mean she is entitled to benefits on the basis of the evidence in this case. Under the statutory definition, the mere fact of employment does not preclude a finding of total disability. The circumstances of the employment may be consistent with a finding of total disability. Social Security Ruling 73–36 stated that a miner could be totally disabled and still be employed if the employment was characterized by "sporadic work, poor performance and marginal earnings." Ruling 73–36 has been followed in subsequent cases. *E. g., Farmer v. Weinberger*, 519 F.2d 627 (6th Cir. 1975); *Tibbs v. Weinberger*, 401 F.Supp. 1139 (E.D.Ky.1975). In addition, other cases have recognized a miner may have been employed and yet totally disabled due to pneumoconiosis if his job was a "make-work" position. *Lawson v. Weinberger*, 401 F.Supp. 403 (W.D.Va.1975); *Rowe v. Weinberger*, 400 F.Supp. 981 (W.D.Va.1975). In such circumstances a miner may have been given a job through the courtesy of the management even though he was no longer able to do work comparable to his usual mine employment.

Some cases similar to the one at bar have been remanded with directions for the administrative law judge to determine what the decedent's work performance actually was. *Corridoni v. Weinberger*, 402 F.Supp. 983 (M.D.Pa.1975); *Rowe v. Weinberger, supra; Dellosa v. Weinberger*, 386 F.Supp. 1122 (E.D.Pa. 1974). In these cases the court found inadequate investigation and considera-

tion by the administrative law judge of the circumstances of the deceased's employment. Appellant has not argued, however, that the factual inquiry was inadequate in this case, or that her late husband's employment would in fact satisfy either condition in which a miner may be employed and yet be totally disabled due to pneumoconiosis. Nothing in the evidence or the argument warrants an assumption on our part that appellant could show an entitlement to benefits under the above standards if we did remand.[3]

Appellant argues that by analogy to the facts in cases such as *Tibbs* and *Dellosa, supra,* this case should be reversed because her husband was disabled by respiratory impairment to a greater extent than the deceased miner in either *Tibbs* or *Dellosa.* He certainly could not do the physical labor he had done in past years. Unlike the miners in *Tibbs* and *Dellosa,* however, Mr. Felthager was an assistant foreman. Under the Act and our traditional concepts, disability is a subjective and individual condition. An impairment that means total disability for one person may not mean total disability for another. The regulations specifically provide for the consideration of age, education, and experience in determining total disability. 20 C.F.R. § 410.426. The facts in *Lawson v. Weinberger, supra,* are nearly identical to the present case. On this issue the court stated:

> There is no evidence of record to suggest that Mr. Lawson's last position of general mine foreman was of a "makeshift" variety. For almost a decade prior to his death, Mr. Lawson was employed in a supervisory capacity. . . . It appears that Mr. Lawson held the position of general mine foreman because of his obvious

qualifications and skills. The fact that the deceased may not have been physically capable of doing manual labor does not alter the circumstance that his "usual work" was as a supervisor. (401 F.Supp. at 405).

We believe this statement applies equally to Mr. Felthager.

Finally, appellant argues it is contrary to legislative intent to deny survivor's benefits when the deceased was totally disabled for all practical purposes, but through inordinate effort continued to work because of economic compulsion amounting to duress. She cites statements to this general effect made by congressmen during the hearings on the 1972 amendments to the Act. She also cites congressional statements, made since the amendments became effective, which indicate some congressmen's displeasure with the Secretary's harshness in administering the Act.

The 1972 amendments were clearly intended to make it easier for claimants to obtain benefits. Congress was concerned because benefits were being denied in over 50 percent of all claims and in 72 percent of the claims in some states. 1972 U.S.Code Cong. & Admin. News 2307. However, when the amendments came to conference, it appears the House feared the Senate Bill's definition of total disability was too liberal. The final word on the subject of legislative intent is contained in the Conference Committee Report. On this issue it states:

> The House receded on the understanding that under the Senate language it is not intended that a miner be found to be totally disabled if he is in fact engaging in substantial work involving skills and abilities closely comparable to those of any mine employment in which he previously en-

<hr>

3. In cases similar to the present one, where "makeshift" or "sporadic" work was not a factor, the Secretary's finding that the deceased was not totally disabled has uniformly been upheld. *See Farmer v. Weinberger,* 519 F.2d 627 (6th Cir. 1975); *Lawson v. Weinberger,* 401 F.Supp. 403 (W.D.Va.1975); *Cox v. Weinberger,* 389 F.Supp. 268 (E.D.Tenn.1975); *Rainey v. Weinberger,* 388 F.Supp. 1277 (E.D. Tenn.1975); *England v. Weinberger,* 387 F.Supp. 343 (S.D.W.Va.1974); *Statzer v. Weinberger,* 383 F.Supp. 1258 (E.D.Ky.1974).

gaged with some regularity and over a substantial period of time . . . .[4] 1972 U.S.Code Cong. & Admin.News 2339. Based on the language of 30 U.S.C. § 902(f) and this statement of legislative intent, we cannot say it is contrary to the intent of Congress to deny benefits when the evidence shows the deceased was effectively performing his usual work at the time of his death. *Farmer v. Weinberger, supra* at 630–31.

■ Under the facts of this case, the denial of benefits because the deceased was employed may seem harsh. But the fact he was doing his usual work in the mines at the time of his death, if not conclusive, is at least substantial evidence in support of the Secretary's finding the deceased was not totally disabled due to pneumoconiosis. This finding must be allowed to stand.

Affirmed.

---

4. Although this statement certainly has some bearing on the issue before us, its importance should not be overestimated. The Conference Committee was not considering the same issue when it made the statement. Under the Act as originally passed in 1969, total disability was defined under the terms of 42 U.S.C. § 423(d)—"inability to engage in any substan-

tial gainful activity." The Senate Committee found this standard unrealistic as applied to coal miners because they were often unsuited for or unable to find work outside the mines. 1972 U.S.Code Cong. & Admin.News 2320–21. The Conference Committee statement of intent was in response to House questions which apparently concerned the effect of the new definition relating the standard of disability specifically to mine work on miners who quit work in the mines and applied for benefits, but did in fact find other comparable work.