Argentina PENNONI, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Defendant.

Civ. A. No. 76–1063.

United States District Court,
District of Columbia.

Nov. 11, 1977.

Joseph W. O'Malley, III, Washington, D. C., Anthony J. Piazza, Jr., Scranton, Pa., for plaintiff.

Michael I. Gewirtz, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter is currently before the Court on defendant's motion for judgment affirming the Secretary's decision to deny plaintiff's claim for benefits under Part B, Title IV of the Federal Coal Mine & Safety Act of 1969, as amended, 30 U.S.C. § 921 *et seq.*, and plaintiff's motion for summary judgment and reversal of the Secretary's decision.[1] The Act provides for the payment of benefits to living miners who are totally disabled due to pneumoconiosis,[2] and to the dependents of miners who died due to pneumoconiosis, or who were totally disabled because of the disease at the time of their death. It must be established that the pneumoconiosis arose out of employment in the Nation's coal mines.

A brief review of the facts shows that plaintiff is the widow of Eliseo Pennoni who was born in Italy in June 1899. He died February 26, 1973.

It is unclear as to how long Mr. Pennoni worked as a miner.[3] However, even viewed in the light most favorable to plaintiff, he worked a maximum of six years back in the 1920's. At the time of his death, he was not entitled to black lung benefits under the Act.

On September 23 and again on September 26, 1973, the miner's treating physician in Italy reported that he had been treating Mr. Pennoni for years because of chronic asthmatic bronchitis from pulmonary silicosis contracted during his work in the mines

---

1. A motion for summary judgment is not appropriate in this case as the Court's function is to review *only* the pleadings and transcripts of the Secretary and not any new factual evidence such as affidavits. *See Torphy v. Weinberger,* 384 F.Supp. 1117 (E.D.Wis.1974). Accordingly, the Court will treat both motions as being filed pursuant to Rule 7(b)(1) F.R.Civ.P. only.

2. Pneumoconiosis is a chronic dust disease of the lung arising out of employment in the Nation's underground coal mines which can take several different forms. 30 U.S.C. § 902(b); 20 C.F.R. § 410.401(b)(1).

3. His affidavit alleges six years, while defendant contends that due to the timing of his marriage to plaintiff, which allegedly took place in Italy, he could not have worked more than two years in the mines.

and that he was disabled from performing any type of work. The same physician also signed the death certificate where he listed the causes of death as chronic bronchitis from pneumoconiosis and cardiocirculatory collapse.

On July 5, 1972, Mr. Pennoni had a physical examination performed by another Italian doctor, and a chest x-ray was taken. The relevant portions of the diagnosis revealed arterial hypertension and bronchial catarrh (inflammation of mucous membranes). The x-ray was reviewed by an internist certified by the National Institute of Occupational Safety & Health (NIOSH) who found it to be completely negative of evidence of pneumoconiosis. It was subsequently classified as 0/0, negative, by a NIOSH–certified internist specializing in pulmonary diseases.

On the same date, yet another doctor performed pulmonary function studies on plaintiff's husband. His cooperation and effort during the test were not reported. Upon review by a different physician, it was reported that the values shown in the studies could not be confirmed since the studies were inadequately labelled. Nonetheless, this reviewing doctor concluded that the values as stated were atypical for pneumoconiosis.

Plaintiff has written several letters citing pneumoconiosis contracted in the Nation's mines as the cause of her husband's death. Also, statements from several people, including the deceased miner's brother, have been submitted as evidence of his mine employment. These statements vary in the details of said employment. No mine records exist.

The administrative proceedings, which began when plaintiff filed her application for benefits on April 2, 1973, have been lengthy and the Court need not trace them here. Defendant does not dispute that plaintiff has met four of the five eligibility requirements for widows' benefits; namely, that she is a widow of a miner, that she has not remarried, that she was dependent on the miner at the time of his death, and that she has comported with the provisions of the Act in filing her claim for benefits, 20 C.F.R. § 410.210. What is disputed is whether plaintiff has met the final criterion; namely, that her husband's death be due to pneumoconiosis, or that he be totally disabled due to the disease at the time of his death.

The Court's sole function is to determine whether the Secretary's decision denying plaintiff's claim for benefits is supported by substantial evidence; i. e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bernardi v. Weinberger,* 412 F.Supp. 629 (E.D. Okl.1975). This standard is the same as that applicable to Social Security Act cases since Section 413(b) of the Mine & Safety Act, 30 U.S.C. § 923(b), incorporates Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), by reference.[4] *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Felthager v. Weinberger,* 529 F.2d 130 (10th Cir. 1976).

Where there is a conflict in the evidence, it is the Secretary's duty to resolve it, and even though the evidence might support an alternative finding, the Secretary's conclusion should be affirmed if supported by substantial evidence. *Blalock v. Richardson,* 483 F.2d 773 (4th Cir. 1972). Plaintiff has the burden of proof with regard to whether she has met the required conditions of eligibility to make her claim. *England v. Weinberger,* 387 F.Supp. 343 (S.D. W.Va.1974).

The Court has carefully reviewed and studied all of the pleadings and the tran-

---

**4.** 42 U.S.C. § 405(g) provides in pertinent part:
"  .   .   . As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or re-

versing the decision of the Secretary, with or without remanding the cause for a rehearing." It further provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive .  . ." and that review under this subsection is exclusive.

script of the administrative record, including that pertaining to the Appeals Council's decision on remand from this Court.[5] In so doing, it has been especially careful to scrutinize all medical reports, letters, statements from co-workers of the deceased miner and other such pertinent documents contained in the record. Although the Court is sympathetic to plaintiff's claim, it cannot say that the Secretary's conclusion was without substantial evidence either under the tests for entitlement provided by the applicable interim adjudicatory rules or under the permanent rules. 20 C.F.R. § 410.401 *et seq.*

Both the interim and permanent rules provide four alternative tests under which plaintiff can attempt to prove her claim. The first test, the interim adjudicatory rule, provides for a rebuttable presumption of death or total disability due to work in the mines which arises where (a) an x-ray, biopsy, or autopsy confirms the existence of pneumoconiosis, or (b) the miner worked more than 10 years in the mines and ventilatory function studies establish the presence of a chronic respiratory or pulmonary disease. 20 C.F.R. § 410.490. Under the permanent rules, a second option establishes an irrebuttable presumption of death or total disability at the time of death due to pneumoconiosis if the evidence demonstrates the existence of "complicated" pneumoconiosis by x-ray, biopsy, autopsy or other acceptable means. 20 C.F.R. §§ 410.418, 410.458; 30 U.S.C. § 921(c)(3). The third test creates a rebuttable presumption of death due to pneumoconiosis if the miner worked for more than 10 years in the Nation's mines and died from a respirable disease. 20 C.F.R. §§ 410.456, 410.462; 30 U.S.C. § 921(c)(1) and (2). Finally, a rebuttable presumption is created if the miner worked for a substantial number of years (10) in the mines and "other evidence" demonstrates the existence of a totally disabling respiratory or pulmonary impairment. 20 C.F.R. §§ 410.414, 410.422, 410.426, 410.-454; 30 U.S.C. § 921(c)(4).

Under the first test, the only chest x-ray submitted was read as negative for pneumoconiosis. No biopsy or autopsy report was available. Accordingly, plaintiff cannot prove her claim under this prong of the interim rule. The values recorded for Mr. Pennoni pursuant to the ventilatory function studies performed did fall within the listed tabular values for a person of his height. However, they were subsequently reviewed by a specialist in internal medicine who concluded that the studies were conducted and the values recorded in such a manner as to render them unacceptable for purposes of plaintiff's claim.[6] He nonetheless found that the values as stated were atypical of pneumoconiosis. This factor, added to the requirements that the miner must have worked in the mines for at least 10 years for the presumption of death or total disability due to the disease to arise, precludes plaintiff from proving her claim as a result of the ventilatory function studies.

Under the second test, again the negative x-ray and the absence of a biopsy or autopsy report preclude the establishment of an irrebuttable presumption of death or total disability at the time of death due to pneumoconiosis.

Pursuant to the third and fourth tests, plaintiff is not entitled to the presumption that the miner died of pneumoconiosis if he died of a respirable disease or that he was totally disabled due to respiratory or pulmonary impairment since he was not employed

---

**5.** On March 30, 1977, the Court remanded this case to the Bureau of Hearings and Appeals, Social Security Administration for consideration of the July 5, 1972 report of Prof. Dr. Federico Dotta as further evidence.

**6.** This doctor based his conclusion on the following factors:

(1) The miner's degree of cooperation, a factor in determining the credibility to be given such studies, was not reported. (2) The testing did not comport with the regulations which require at least three tests to be performed and recorded for each of the ventilatory variables in order for the testing to meet with acceptable medical procedure. 20 C.F.R. § 410.430. (3) The paper speed was not given and the tracings were not appropriately labelled. 20 C.F.R. § 410.430.

in the mines for at least 10 years.[7] A miner with less than 10 years of mine work must show that he has actual pneumoconiosis,[8] and once again, this can presumably only be done by x-ray, autopsy or biopsy. 20 C.F.R. § 410.428.

Without the benefit of the presumptions, plaintiff cannot sustain her burden. There is substantial support in the physician's report of the deceased miner's physical examination conducted approximately six months prior to his death for the conclusion that the primary cause of death was cardiocirculatory collapse and not pneumoconiosis. The July 5, 1972 pulmonary function studies, as previously mentioned, were not performed in conformance with the specifications of 20 C.F.R. § 410.430 and produced values which were diagnosed as atypical for pneumoconiosis. The medical opinions rendered by Mr. Pennoni's treating physician are conclusory and unsupported by clinical documentation. Therefore, they can be afforded little weight. *Campbell v. Weinberger*, 402 F.Supp. 1147 (N.D.W.Va.1975). Finally, plaintiff's case is further weakened by the Court's finding of substantial support for the Appeals Council's conclusion that this deceased miner only worked for slightly over two years (1926–28) in the mines, and not six (1922–28) as he claims. Since his marriage certificate indicates he was married in Italy in 1926, it is highly unlikely that he worked for six years in this country beginning in 1922. Consequently, this extremely limited exposure to coal dust hazard further supports the Secretary's denial of plaintiff's claim.

Plaintiff has failed to establish that her husband's death was due to, or that he was totally disabled at the time of his death by, pneumoconiosis arising from his coal mine employment under any of the tests set forth in the statute or regulations. Additionally, no purpose would be served by remanding the cause to the Secretary for rehearing.[9]

Accordingly, plaintiff's motion for reversal of the decision of the Secretary is denied and defendant's motion for judgment affirming the decision to deny plaintiff's claim for benefits under the Federal Coal Mine Health and Safety Act is granted.

An appropriate judgment and order is entered herewith.

7. The Act as written requires 15 years but this was administratively reduced to 10 years.

8. The Senate Committee report states in pertinent part:

The Committee intends that the burden will be placed on the claimant to prove the existence of pneumoconiosis in cases where the miner worked fewer than fifteen years in a coal mine, but that judgment will be allowed to be exercised in determining the validity of claims in such cases, including the determination that the miner's disability is not due to pneumoconiosis or that it is not related to his employment in a coal mine. A miner's work history reflecting many years of mining work, though short of fifteen, and the severity of his impairment, shall also be considered. It is further intended that a mere showing of a respiratory or pulmonary impairment will not be sufficient to establish a claim for benefits. . . .

The fifteen year period is not intended to be an inflexible standard serving as a bar to successful claims. It merely reflects the testimony of the Surgeon General in 1969, who stated:

"For work periods less than 15 years underground, the occurrence of pneumoconiosis among miners appears to be spotty and showed no particular trend. For work periods greater than 15 years underground, there was a linear increase in the prevalence of the disease with years spent underground."

1972 U.S.Code Cong. & Admin.News, at 2317.

9. Plaintiff's counsel had already requested an extension of time from the Appeals Council for purposes of submitting additional affidavits and medical testimony. He was apparently unable to acquire the needed material. Consequently, there could be nothing further for the Secretary to consider.