Neldon OLIVER, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

Civ. No. C-75-528.

United States District Court, D. Utah, C. D.

April 12, 1979.

---

Virginius Dabney, McMillan & Browning, Salt Lake City, Utah, for plaintiff.

Ronald L. Rencher, U. S. Atty., James R. Holbrook, Asst. U. S. Atty., Salt Lake City, Utah, for defendant.

## MEMORANDUM, CONCLUSIONS OF LAW and ORDER

JENKINS, District Judge.

Plaintiff Oliver seeks judicial review of the final decision of the defendant Secretary of Health, Education and Welfare (hereinafter referred to as the Secretary) denying Oliver's claim for black lung disability benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 901, *et seq.* Jurisdiction and the standard for review of this action are found in 30 U.S.C. § 923(b), incorporating the Social Security Act, 42 U.S.C. § 405(g). As to questions of fact, the Secretary's decision must be affirmed if supported by substantial evidence on the record as a whole. *See also*, the Administrative Procedure Act, 5 U.S.C. § 706(2)(E). However, the court is not bound to accept the conclusions of the Secretary as to legal questions, and is free to review those conclusions, keeping in mind that some deference is accorded to the agency's own interpretation of its governing law. *See*, 5 U.S.C. § 706(2)(A) through (D).

Oliver's application for black lung benefits was filed December 29, 1971 (Tr.44). It was denied March 24, 1972 on the grounds that although Oliver did have a "lung condition", it had not advanced to "complicated pneumoconiosis", and therefore because he was still employed as a coal miner, he could not establish the total disability required for benefits under the law (Tr.48). Agency reviews dated March 24, 1972 and May 11, 1973 affirmed the initial agency decision. (Tr.50–53).

A hearing on Oliver's application was held before an Administrative Law Judge on March 28, 1975. Oliver testified at the hearing, and certain medical evidence was introduced. At the time of the hearing, Oliver was 53 years old and had worked in the coal mines for 26 years before his retirement in August, 1974 (Tr.27). He testified that he had breathing problems, sleeping difficulties, a chronic cough that produced black phlegm, chest pains, fatigue and an inability to lift more than 25 lbs. (Tr.31–34).

Medical reports dated August 23, 1971 (Tr.65), Feb. 17, 1972 (Tr.74), September 28, 1972 (Tr.76), July 14, 1974 (Tr.80) and April 30, 1975 (Tr.85) all revealed the presence of simple pneumoconiosis, popularly known as black lung disease. Apparently, another medical exam was performed November 6, 1975, but this exam was not before the Administrative Law Judge, is not part of the agency record before this court and thus will not be considered. Regardless of the November 6, 1975 study, it is undisputed that Oliver was suffering from simple pneumoconiosis on the dates of the other medical reports mentioned above. The only question remaining was whether the pneumoconiosis was totally disabling, and the Administrative Law Judge decided it was not. His Findings and Decision dated August 12, 1975 relied on ventilatory studies and blood gas analyses as establishing that while Oliver couldn't return to mine work, he had the capacity to do comparable work outside the mines (Tr.11). On November 21, 1975, the Appeals Council affirmed the Administrative Law Judge, on the basis that Oliver's continued coal mine employment precluded a finding of total disability (Tr.3).

His administrative remedies exhausted, Oliver petitioned this court for a review of the Secretary's determination. After briefs and oral arguments were submitted by the parties, the Honorable Willis W. Ritter issued an opinion dated August 9, 1976, reversing the Secretary's decision on the basis that it was not supported by substantial evidence, holding that Oliver was entitled to black lung benefits as a matter of law, and remanding to the Secretary for payment of benefits. The Secretary appealed to the United States Tenth Circuit Court of Appeals, but pursuant to the stipulation of the parties the matter was remanded back here by the Tenth Circuit "for further proceedings consistent with this Court's opinion" in *Paluso v. Mathews*, 573 F.2d 4 (10th Cir. 1978), hereinafter cited as *Paluso*. On remand, the parties again have submitted briefs; oral arguments were heard January 12, 1979, and the matter is ripe for decision.

Before discussing the application of *Paluso* to these proceedings, it may be helpful to examine some of the statutory, regulatory and decisional framework surrounding black lung benefits. 30 U.S.C. § 901 *et seq.*, as amended in 1972, provides for benefit payments to persons totally disabled by pneumoconiosis contracted through coal mine employment. In order for the Secretary to have jurisdiction to award benefits, an application must be filed and total disability must exist by June 30, 1973. Applications filed and total disability beginning after this date fall within the jurisdiction of the Secretary of Labor or state workmen's compensation laws, except for a limited class of applications filed from July 1, 1973 to December 31, 1973, which create shared responsibility between the Secretary of Labor and the Secretary of HEW. *Hanna v. Califano*, 579 F.2d 67 (10th Cir. 1978). Oliver filed his application before June 30, 1973, and he must establish total disability beginning on or before that date. *See* 30 U.S.C. § 924, *Paluso* at pp. 9–10 and *Talley v. Mathews*, 550 F.2d 911, 914–915 (4th Cir. 1977), hereinafter cited as *Talley v. Mathews*.

Regulations in 20 CFR Part 410 have been promulgated under the authority of 30 U.S.C. § 901, *et seq.* These regulations incorporate and embellish upon certain statutory presumptions and standards relevant to Oliver's claim. In order to be totally disabled under 20 CFR § 410.412, one must not only be incapable of working in the mines but also incapable of engaging in any comparable and gainful employment

in the immediate area of his residence. If chest x-rays establish "complicated" pneumoconiosis (opacities greater than 1 cm. in diameter) then there is an *irrebuttable* presumption that the applicant is totally disabled. 20 CFR § 410.418. If chest x-rays show only "simple" pneumoconiosis, there is a *rebuttable* presumption of total disability, and engaging in one's usual coal mine work or other comparable and gainful work *may* rebut the presumption. 20 CFR § 410.490. If chest x-rays do not establish simple pneumoconiosis, these "interim" presumptions in 20 CFR § 410.490 provide that the results of ventilatory studies or blood gas analyses may create a presumption of simple pneumoconiosis, which in turn would create a presumption of total disability.

As noted above, it is undisputed that Oliver's chest x-rays showed simple pneumoconiosis, both before and after June 30, 1973. Nevertheless the Administrative Law Judge apparently used the results of ventilatory studies and blood gas analyses performed on Oliver to rebut the presumption of total disability due to simple pneumoconiosis. (Tr.10–11).

■ The Administrative Law Judge made two errors of law in so using the ventilatory studies and blood gas analyses. First, as accurately noted by Judge Ritter, the blood gas analysis of April 30, 1975 (Tr.85) showed an "at rest" value of 60 mm. $PO_2$ at 31 mm. $PCO_2$, which creates a presumption of disability on the date of the test under 20 CFR § 410.490 (Appendix), even though exercise apparently "normalized" the blood gas values. That the Administrative Law Judge concluded otherwise indicates that he misread either the test results or the regulation.

■ Second, and more important, the Administrative Law Judge erred in using blood gas analyses and ventilatory studies to rebut Oliver's chest x-rays, even to the extent that results of the analyses and studies exceeded the threshold levels of 20 CFR § 410.490. Under the plain language of 20 CFR § 410.490, results of blood gas analyses and ventilatory studies become material *only if chest x-rays do not estab-*

*lish simple pneumoconiosis.* In other words, 20 CFR § 410.490 provides that a positive chest x-ray establishes a presumption of total disability due to pneumoconiosis; if chest x-rays are negative, then positive results on ventilatory studies create the presumption; if both chest x-rays and ventilatory studies are negative, then positive results on blood gas analyses establish the presumption. The requirements of positive results on chest x-rays, blood gas analyses, or ventilatory studies are clearly *alternative requirements, not cumulative ones.* If one of the three alternative requirements is met, then the other two need not be met in order to establish the presumption. Although 20 CFR § 410.490(c)(2) provides that, ". . . other evidence, including physical performance tests . . ." *may* rebut the presumption, it is obvious that "other" evidence means evidence other than that evidence used to establish the presumption. The purpose of the regulations in allowing use of blood gas and ventilatory tests is to allow the claimant to establish disability in the event of a negative chest x-ray, not to create new obstacles to recovery by a claimant whose positive chest x-ray creates a presumption of total disability. The effect of the Administrative Law Judge's decision is to require an applicant to show both positive chest x-rays *and* either positive blood gas or ventilatory study results. This is clearly erroneous as a matter of law under the regulations.

■ Of course the most obvious evidence to rebut the presumption of Oliver's total disability due to undisputed pneumoconiosis was that relied on by the Appeals Council (Tr.3) and referred to in 20 CFR § 410.490(c)(1), i. e. Oliver's continued coal mine employment after June 30, 1973, until August 15, 1974. (Tr.27). 20 CFR § 410.-490(c)(1) provides that the rebuttable presumption of total disability from simple pneumoconiosis, ". . . *may* be rebutted if . . . the individual is, in fact, doing his usual coal mine work . . ." (emphasis added). Unfortunately, at the time Oliver's claim was being processed through HEW, the Secretary was operating under

an erroneous interpretation of its own regulations. The Secretary assumed that engaging in usual coal mine work *must automatically* rebut the presumption of total disability. (Tr.3). This assumption is clearly erroneous as a matter of law because continued employment is not inconsistent with total disability where the disability results in sporadic work, poor performance, marginal earnings, a "make-work" job, or where through extra-ordinary physical effort a miner continues to work in the mines to insure survival during the pendancy of his claim. *See, Hanna v. Califano, supra* at p. 69, and *Talley v. Mathews, supra*, at pp. 918–919. Congress has also seen fit to limit the use of continued employment as conclusive evidence rebutting disability, in 30 U.S.C. § 902(f)(1)(B) (as amended in 1978). Of course the 1978 amendments to 30 U.S.C. § 902 were not in effect while Oliver's claim was being processed.

Although the administrative record is devoid of any of the above-listed considerations that might make continued employment consistent with total disability, *the record is also devoid of any evidence as to whether Oliver's continued employment after June 30, 1973 was his "usual coal mine work"* within the meaning of 20 CFR § 410.490(c)(1). Although the Administrative Law Judge interrogated Oliver as to the last date of his employment and as to the general nature of his duties during his 26 years of employment, no interrogation was made concerning the nature of Oliver's duties after June 30, 1973, or whether those duties differed from those performed prior to that date (Tr.27–30). The general nature of Oliver's mine work was characterized as "heavy labor" (Tr.10). Oliver was represented by a union official rather than an attorney in the administrative proceedings (Tr.25). Work activity reports and statements of earnings were submitted into evidence, but these do not appear to relate to any period after June 30, 1973. (Tr.54–62).

 Even if Oliver's continued coal mine employment did not rebut the presumption of total disability, that presumption may be rebutted by evidence that he was capable of performing comparable gainful employment in the immediate area of his residence. 20 CFR §§ 410.412(a)(1) and 410.490(c)(1). The Administrative Law Judge concluded that as of 1975, the time of Oliver's hearing, Oliver could not return to the mines but that he could do "heavy labor" in another job. (Tr.10–11). The Administrative Law Judge relied heavily on the medical report of Jeffrey R. Simons, M.D., in reaching that conclusion (Tr.9), and Dr. Simons relied heavily on the previously conducted blood gas and ventilatory studies described above (Tr.87). Oliver resided in Price, Utah, and although the Administrative Law Judge took "judicial notice" of the scarcity of work outside the mines, he concluded that there were "many types of laboring work" on farms near Price and in the city itself. (Tr.10). Again, however, there is no evidence in the record, from a vocational expert or otherwise, of the availability of such work in or near Price. The effect of the paucity of evidence as to comparable work, as to what type of mine work Oliver performed after June 30, 1973, as to whether this mine work was consistent with total disability, and the effect of the administrative errors of law mentioned above will be discussed in light of *Paluso*.

*Paluso* was concerned with how to treat miners' black lung claims filed by June 30, 1973, but relying on evidence of disability adduced after June 30, 1973. The court's holding is summarized as follows:

1. A miner's claim shall be deemed to be "filed" by June 30, 1973, for purposes of HEW jurisdiction, even though medical evidence supporting the claim is not "filed" until after June 30, 1973.

2. In order to establish eligibility for HEW black lung benefits, the miner must show that his disability began by June 30, 1973.

3. Medical evidence obtained after June 30, 1973 may be used to establish disability beginning by that date, if reasonable medical or mathematical probabilities indicate that this evidence relates back.

4. In determining whether total disability existed as of June 30, 1973, *all reasonable*

18

*doubts are to be resolved in favor of the claimant.*

In applying *Paluso* to the proceedings before this court on remand, it appears that the x-ray report of August 23, 1971 establishes Oliver's simple pneumoconiosis no later than that date. (Tr.65). Subsequent x-rays taken both before and after June 30, 1973 do not dispute the first x-rays. Thus there is no need to "relate back" medical evidence obtained after June 30, 1973 in order to establish that, as a matter of law, Oliver is presumed to be totally disabled due to pneumoconiosis under 20 CFR § 490.-410(b)(1)(i). The only question remaining is whether the Secretary produced any substantial evidence to rebut this presumption, according to a valid interpretation of the legal standards in effect at the time of the Secretary's determination.

 As noted above, this court concludes that the Secretary and the Administrative Law Judge did an inadequate job of developing evidence to rebut the presumption of total disability, and the evidence that was adduced was measured against clearly erroneous interpretations of the Secretary's own regulations. This court is keenly aware that it may not take new evidence, may not make new findings of fact, and that remand to the Secretary is the usual remedy where additional evidence or findings of fact may be helpful. However, it must also be kept in mind that it has been more than seven years since Oliver's claim was filed, and that this delay was due in large part to the errors of the Secretary. Also this court is expressly under the mandate of *Paluso*, which reiterated several times that the black lung benefits laws are remedial in nature, are to be liberally construed, and that all doubts as to eligibility are to be resolved in favor of the claimant. *Paluso*, at p. 10. Additionally, the position of the Tenth Circuit Court of Appeals in disability cases brought under the Social Security Act, which is incorporated in black lung proceedings by 30 U.S.C. § 923, is that once the claimant establishes a prima facie case of disability, he is entitled to benefits as a matter of law if the

Secretary fails to meet his burden of proof rebutting the prima facie case. *See, Sanchez v. Califano*, No. 77–1900 (10th Cir. Jan. 11, 1979), an unreported decision relying on *Keating v. Secretary of HEW*, 468 F.2d 788 (10th Cir. 1972) and *Valentine v. Richardson*, 468 F.2d 588 (10th Cir. 1972). Thus it would be counterproductive and antithetical to the remedial purposes of the laws governing black lung benefits to remand to the Secretary for further evidentiary proceedings and findings of fact at this point, where the Secretary has not met his burden of proof and is responsible for the defects in the administrative proceedings.

Therefore, in light of the foregoing and based solely on facts in the administrative record before the court, the court hereby issues the following Conclusions of Law and Order:

## CONCLUSIONS OF LAW

1. Undisputed x-ray evidence shows that Oliver began suffering from simple pneumoconiosis no later than August 23, 1971, as a result of his 26 years of coal mine employment, so that as a matter of law he is presumed to be totally disabled pursuant to 20 CFR § 410.490(b)(1)(i), based on his application for benefits dated December 29, 1971.

2. Under 20 CFR § 410.490, as a matter of law, the results of the ventilatory studies and blood gas analyses performed on Oliver were not substantial evidence rebutting the presumption of total disability from simple pneumoconiosis.

3. Under 20 CFR § 410.490(c)(1), as a matter of law, there is no evidence in the record that Oliver's continued coal mine employment after July 30, 1973 was his "usual coal mine work".

4. Under 20 CFR § 410.412(a)(1) and 410.490(c)(2), as a matter of law, there is no evidence in the record that there was comparable and gainful work, other than coal mining, that Oliver could perform "in the immediate area of his residence".

5. The record contains no other substantial evidence rebutting the presumption

that Oliver was totally disabled due to simple pneumoconiosis, and therefore, as a matter of law, Oliver is entitled to black lung benefits based on his application of December 29, 1971.

### ORDER

It is hereby ordered that the decision of the Secretary be reversed and that this matter be remanded to the Secretary for the award and payment of black lung benefits to Oliver, based on Oliver's application of December 29, 1971, in compliance with the foregoing decision of this court and applicable law.