**Cecil BOHN, Plaintiff,**

v.

**Patricia R. HARRIS, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. C 79–0574.**

United States District Court, D. Utah, C. D.

June 6, 1980.

Virginius Dabney, McMillan & Browning, Salt Lake City, Utah, for plaintiff.

James R. Holbrook, Asst. U. S. Atty. for Utah, Salt Lake City, Utah, for defendant.

## MEMORANDUM, CONCLUSIONS OF LAW AND ORDER

JENKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Defendant Secretary of Health, Education and Welfare (hereinafter referred to as the Secretary)[1] denying his claim for black lung disability benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 901, *et seq.* Presently before the court are Plaintiff's Motion for Reversal of the Final Decision of the Secretary Denying Black Lung Benefits to Plaintiff and Defendant's Motion to Affirm the Decision.

■ Jurisdiction and the standard for review of this action are found in 30 U.S.C. § 923(b), incorporating the Social Security Act, 42 U.S.C. § 405(g), which provides in pertinent part that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." "Substantial evidence" is defined as " . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. N. L. R. B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Hanna v. Califano*, 579 F.2d 67, 68 (10th Cir. 1978); *Felthager v. Weinberger*, 529 F.2d 130, 131 (10th Cir. 1976); *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). *See also*, the Administrative Procedure Act, 5 U.S.C. § 706(2)(e). However, the court is not bound to accept the conclusions of the Secretary as to legal questions, and is free to review those conclusions, keeping in mind that some deference is accorded the Agency's own interpretation of its governing law. *See*, 5 U.S.C. § 706(2)(A) through (D). It should also be noted that in determining whether a conclusion is supported by substantial evidence, the reviewing body must look not only at the evidence which supports the conclusion, but at that evidence which fairly detracts from it. *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). The central issue, therefore, is narrow, i. e., whether there is substantial evidence upon the record as a whole to support the findings, conclusions and final decision of the Secretary that Plaintiff was not totally disabled due to pneumoconiosis, arising out of his employment in the nation's underground coal mines, on or before June 30, 1973. *Paluso v. Mathews*, 562 F.2d 33, 36 (10th Cir. 1977), reh., 573 F.2d 4, 10 (10th Cir. 1978).

■ Pneumoconiosis, commonly referred to as "black lung", is a chronic chest disease which is caused by fine coal dust particles lodging themselves in the lung. Because of the devastating, progressive character of this disease and because the Act is basically remedial in nature, claims for compensation are to be liberally construed in favor of awarding benefits, and any doubts from the evidence are to be resolved in favor of the claim. *Paluso, supra* at 36 and 573 F.2d at 10; *Henson v. Weinberger*, 548 F.2d 695, 699 (7th Cir. 1977); *Puckett v. Mathews*, 420 F.Supp. 364, 366 (D.C.Va.1976); *Tonker v. Mathews*, 412 F.Supp. 823, 827 (D.C.Va. 1976); Report No. 94–1254, Senate Committee on Labor and Public Welfare, pp. 1–3 (September 20, 1976); Report No. 92–743 Senate Committee on Labor and Public Welfare, p. 11 (April 10, 1972). As the United States Court of Appeals for the Tenth Circuit noted in *Paluso* on rehearing:

*We are of the view that all reasonable inferences and presumptions should be construed in favor of a miner who when he filed his claim believed that he was suffering from black lung, even though he had not mustered sufficient evidence of his disability prior to the cut-off date. We anchor this approach to a variety of factors, including a claimant's ignorance*

---

1. Originally, the Defendant was Joseph A. Califano, Jr., then Secretary of Health, Education and Welfare. As the latter's successor, Patricia R. Harris is deemed automatically substituted as the Defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

or misunderstanding of eligibility standards, lack of adequate medical evidence due to the progressive nature of black lung disease, a miner's financial inability to seek proper medical confirmation, and inexact methods of diagnosis. *It is a matter of overriding importance that the Act is remedial in nature and is to be given liberal construction.* (citations).

\*     \*     \*     \*     \*     \*

*Any doubts which arise as to when black lung caused total disability are to be resolved in favor of these good faith claimants. Id.* at 10 (emphasis added).

■ Generally speaking, a living miner shall be considered totally disabled due to pneumoconiosis if his pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time, and his impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than 12 months. 20 CFR 410.-412(a)(1), (2). Because of the medical difficulty in obtaining a clinical diagnosis of pneumoconiosis, and as a matter of public policy, Congress established certain standards and presumptions to assist coal miners in establishing their claims.

There is an irrebuttable presumption that a living coal miner is totally disabled due to pneumoconiosis if he is suffering or suffered from a chronic dust disease of the lung as established by chest x-rays yielding one or more opacities greater than one centimeter in diameter and which are classified as "complicated pneumoconiosis".

■ There is a rebuttable presumption that a living coal miner is totally disabled due to pneumoconiosis if a chest x-ray, biopsy or autopsy yields a finding of "simple pneumoconiosis". 20 CFR 410.-490(b)(1)(i) and 20 CFR 410.428. *Mutter v. Weinberger,* 391 F.Supp. 951, 953–954 (W.D. Va.1975). *See Gray v. Secretary,* 402 F.Supp. 1303, 1305–1306 (E.D.Mich.1975).

The presumption may be rebutted only if the coal miner is actually performing, or other evidence indicates that he could perform, either his usual coal mine work or comparable and gainful work. 20 CFR 410.490(c). Blood gas analyses and ventilatory studies are among the other alternative types of evidence that may establish the rebuttable presumption.

■ These presumptions, it should be noted, were created to enable black lung claimants to obtain benefits despite the absence of clinical diagnoses of pneumoconiosis as the exact cause of total disability or death. *Smakula v. Weinberger,* 572 F.2d 127, 129 (3rd Cir. 1978); *Putsakulish v. Califano,* 448 F.Supp. 192, 194–195 (W.D.Pa. 1978). In addition, once the coal miner triggers the presumption, the burden of going forward shifts to the Secretary. *Sanchez v. Califano,* No. 77–1900 (10th Cir., January 11, 1979), an unreported decision relying on *Keating v. Secretary,* 468 F.2d 788 (10th Cir. 1972) and *Valentine v. Richardson,* 468 F.2d 588 (10th Cir. 1972); *Prokes v. Mathews,* 559 F.2d 1057, 1060 (6th Cir. 1977).

Bohn's application for black lung benefits was timely filed on November 30, 1972, approximately seven months prior to the jurisdictional cut-off date (Tr. 45–48). It was denied on June 18, 1973 on the grounds that although he was suffering from simple pneumoconiosis (Category 1/1), he was "currently engaging in coal mine work" and his "evidence did not establish complicated pneumoconiosis" (Tr. 49, 50–52). He requested reconsideration of that decision on December 13, 1973 (Tr. 53) which was again denied on February 5, 1974 for the same reasons stated in the prior denial (Tr. 54, 55–57).

A hearing on Bohn's application (Tr. 25) was held before an Administrative Law Judge on March 25, 1975 (Tr. 26–44). Bohn testified at the hearing and certain medical evidence was introduced into evidence. Bohn testified that he planned to retire in 1976 for medical reasons, but desired to keep working to obtain a substantial increase in his miner's pension and other ben-

efits (Tr. 17, 30–31, 34–35, 41). He claimed that his lungs hurt nearly all the time, that he was short-winded, that his chest ached, and that he woke up at night with pain in his lungs (Tr. 17, 31–33, 39–40).

An x-ray report of January 11, 1973 was originally read as 1/2 (U.I.C.C.) ["simple" pneumoconiosis] and re-read by a board-certified "B" reader as 1/1 (U.I.C.C.) ["simple" pneumoconiosis] (Tr. 60–62). A subsequent x-ray report of August 2, 1973 was read as containing "some diffuse pulmonary fibrotic change" without reference to any category of pneumoconiosis (Tr. 65). The medical report of December 18, 1973 included the diagnosis of pulmonary emphysema and mild fibrosis (Tr. 63–64, 66). The blood gas study of May 1, 1975 both before and after exercise rendered values equal or less than the values contained in the regulations (Tr. 11, 70).

At the time of the hearing, Bohn was 62 years old (Tr. 30), had worked in the coal mines for more than 25 years (Tr. 18, 31, 47, 58), and had an eighth grade education (Tr. 45, 49, 54).

On May 20, 1975 the Administrative Law Judge awarded black lung benefits to Bohn holding that the medical evidence demonstrated the existence of "complicated" pneumoconiosis (Tr. 18). Subsequently, on May 12, 1976, the Appeals Council decided to review the Administrative Law Judge's decision (Tr. 72–86).

On August 23, 1979, the Appeals Council reversed the decision awarding benefits on the basis that Bohn did not have "complicated" pneumoconiosis and that his continued coal mine employment precluded a finding of total disability (Tr. 6–14). His administrative remedies exhausted, Bohn petitioned this court for a review of the Secretary's final determination. The parties have submitted briefs and presented oral argument, and the matter is now ripe for decision.

It is undisputed that Bohn timely filed his claim for Black Lung benefits and that he was suffering from simple pneumoconiosis before the jurisdictional cut-off date. The Secretary readily conceded as much in oral argument, in the record and in her brief (Tr. 11, 14, 49, 54). Secretary's Brief, pp. 2, 7–8. Hence, Bohn is presumed to be totally disabled due to pneumoconiosis under 20 CFR § 410.490(b)(1)(i). However the Secretary's finding of no complicated pneumoconiosis that would create an irrebuttable presumption was supported by substantial evidence. Therefore, the only question remaining is whether the Secretary produced any substantial evidence to rebut the rebuttable presumption. Her Findings and Decision dated August 23, 1979 relied upon the sole premise that Bohn continued to work in his usual coal mine job beyond the jurisdictional cut-off date.

■ 20 CFR § 410.490(c)(1) provides that the rebuttable presumption of total disability from simple pneumoconiosis ". . . may be rebutted if . . . the individual is, in fact, doing his usual coal mine work . . . ." However, continued employment is not inconsistent with total disability where the disability results in sporadic work, poor performance, marginal earnings, a "make-work" job, or where through extraordinary physical effort a miner continues to work in the mines to insure survival during the pendency of his claim. *Hanna, supra* at 69; *Felthager, supra; Oliver v. Califano,* 476 F.Supp. 12 (D.Utah 1979).[2]

Although the administrative record is devoid of any of the above-listed considerations that might make continued employment consistent with total disability, the record is also devoid of any evidence as to whether Bohn's continued employment after June 30, 1973 was his "usual coal mine work" within the meaning of 20 CFR § 410.490(c)(1). Although the Administrative Law Judge interrogated Bohn as to the general nature of his duties during his more than 25 years of employment, no interrogation was made concerning the nature of Bohn's duties after June 30, 1973, or whether those duties differed from those per-

---

**2.** Congress has seen fit to limit the use of continued employment as conclusive evidence

rebutting disability, in 30 U.S.C. § 902(f)(1)(B) (as amended in 1978).

formed prior to that date. *Oliver, supra,* at 17. It is interesting to note that when Bohn filed his claim for black lung benefits, he was roof bolter and materialman (Tr. 11), but when he attended his hearing approximately two and one-half years later, his job had changed to greasing and oiling (Tr. 30–31). The record is silent on what the jobs' differences were, why Bohn changed jobs, and whether one was more difficult than the other. Bohn further testified that he was " . . . not up to it" anymore, felt like he wasn't " . . . going to make it" when he walked up a hill, was "shortwinded" (Tr. 31), and that he had " . . . to take more time" than other miners to walk out of the mine (Tr. 39).

In addition, it appears that one of the reasons Bohn kept working was so he could get a higher monetary miner's pension (Tr. 35); that he was held to the mining job out of financial necessity and that he had trouble doing simple chores around the house, such as yardwork. Bohn was not represented by counsel at his administrative hearing.

Even if Bohn's continued coal mine employment did not rebut the presumption of total disability, that presumption may be rebutted by evidence that he was capable of performing comparable gainful employment in the immediate area of his residence. 20 CFR §§ 410.412(a)(1) and 410.490(c)(1). However, there is no evidence in the record from a vocational expert or otherwise of availability of such work in or near Price, Utah, and, the Secretary does not even mention this as a rebuttal argument (Tr. 6–14).

■ The court concludes that the Secretary did not meet the burden of developing evidence to rebut the presumption of total disability. The court is keenly aware that it may not take new evidence, may not make new findings of fact, and that remand to the Secretary is the usual remedy where additional evidence or findings of fact may be helpful. However, it must also be kept in mind that it has been almost eight years since Bohn's claim was filed. He is entitled to benefits as a matter of law if the Secretary fails to meet his burden of proof rebut-

ting the prima facie case. Thus it would be counterproductive and antithetical to the remedial purposes of the laws governing Black Lung benefits to the Secretary for further evidentiary proceedings and findings of fact at this point, where the Secretary has not met her burden of proof.

Therefore, in light of the foregoing and based solely on facts in the administrative record before the court, the court hereby issues the following Conclusions of Law and Order:

## CONCLUSIONS OF LAW

1. Undisputed x-ray evidence shows that Bohn began suffering from simple pneumoconiosis no later than January 11, 1973, as a result of his 25-plus years of coal mine employment, so that as a matter of law he is presumed to be totally disabled pursuant to 20 CFR § 410.490(b)(1)(i), based on his application for benefits dated November 30, 1972.

2. The record contains no other substantial evidence rebutting the presumption that Bohn was totally disabled due to simple pneumoconiosis, and therefore, as a matter of law, Bohn is entitled to Black Lung benefits based on his application of November 30, 1972.

3. Although the Secretary's finding of no complicated pneumoconiosis was supported by substantial evidence, this case is governed by the court's decision in *Oliver v. Califano, supra.*

## ORDER

It is hereby ordered that the decision of the Secretary be reversed and that this matter be remanded to the Secretary for the award and payment of Black Lung benefits to Bohn based on his application of November 30, 1972, in compliance with the foregoing decision of this court and applicable law.