**McKinley BOWLING, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 90–3141.

United States Court of Appeals, Sixth Circuit.

Submitted Nov. 14, 1990.

Decided Nov. 30, 1990.

H. Garland Wells, Hazard, Ky., for petitioner.

Barbara J. Johnson, Rodger Pitcairn, Brian E. Peters, U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., for respondent.

Before KRUPANSKY, GUY, and SUHRHEINRICH, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Petitioner, McKinley Bowling, appeals from a denial of black lung benefits. Benefits were denied because the Secretary concluded that Bowling was currently performing work comparable to his usual coal mine work. The issue Bowling raises on appeal is a very narrow one. He challenges only the administrative law judge's (ALJ) finding that his last job in the mines as a roof bolter was his "usual" coal mine work.

Upon review, we find that the Secretary's conclusion that the roof bolter's job did qualify as petitioner's usual coal mine work was appropriate. Accordingly, we affirm.

## I.

Bowling worked in coal mines from 1944 to 1967.[1] He had a number of jobs, including loading, drilling and shooting coal, operating a cutting machine, and working on a tipple. For the last two years that Bowling worked in the mines he was a roof bolter.

After leaving mine work in 1966, Bowling worked as a janitor at an army ammunition plant until 1974.[2] From 1974 through the date of his hearing in 1985, Bowling worked for Arvin Industries as a press operator.

At the hearing before the ALJ, Bowling, having demonstrated more than ten years of coal mine employment, had his claim reviewed pursuant to the provisions of 20 C.F.R. § 727.203. Under this section a miner will be presumed to be totally disabled due to pneumoconiosis if one of four listed medical requirements can be met.

The ALJ found that Bowling could not meet the medical requirements of a positive x-ray, ventilatory studies, or blood gas studies, but found that "other medical evidence," i.e., doctors' opinions, did establish the presence of a totally disabling respiratory impairment. 20 C.F.R. § 727.203(a)(4).

The ALJ went on to find, however, that pursuant to the rebuttal provisions of section 727.203(b), the Director had successfully rebutted the presumption. Specifically, the ALJ found that under section 727.-203(b)(1) the petitioner was *doing* work comparable to his usual coal mine work, and that under section 727.203(b)(2) the miner was *capable* of performing his usual coal mine work or comparable work.

On appeal to the Benefits Review Board (Board), Bowling only challenged the ALJ's finding that his "employment at the time of the hearing ... constituted comparable and gainful work within the meaning of Section 727.203(b)(1)." Bowling did not mention the ALJ's rebuttal findings under section 727.203(b)(2). In disputing the section 727.-203(b)(1) finding, petitioner admitted that the ALJ must compare his current employment with his usual coal mine work but disputed whether his job as a roof bolter at AK & P Coal constituted his usual coal mine employment. Bowling argued that the ALJ had assumed that his last work was his usual work without considering "the circumstances surrounding that employment," such as his reason for taking the roof bolter job and the length of time he held that job in comparison to other coal mine jobs. Bowling did not indicate which of his various jobs he considered to be his usual work nor did he argue that his job as a roof bolter was not comparable to his work for Arvin Industries.

## II.

We turn our attention first to an argument made by the Secretary that has drawn no response from the petitioner. The Secretary contends that the only issue

---

1. The ALJ credited Bowling with 17 years and nine months of coal mine employment.

2. Bowling first filed for benefits in 1970 and has filed numerous applications for benefits since then, all of which have been denied.

appealed to the Board and this court concerns the finding of rebuttal under section 727.203(b)(1); that is, the petitioner is *doing* work comparable to his usual coal mine work. The Secretary argues that since no appeal was taken from the ALJ's conclusion that rebuttal was also accomplished pursuant to section 727.203(b)(2), that ruling stands and mandates affirmance. We disagree.

Although, in the abstract, the Secretary's argument as it relates to alternate unappealed grounds for a denial has merit, we do not believe it to be applicable under the facts and circumstances here. Rebuttal under section 727.203(b)(1) requires a finding that a miner is *doing* work comparable to his usual coal mine work; section 727.-203 rebuttal requires a finding that the miner is *capable* of doing such work. The distinction between the two sections is obvious. A claimant might not be working at all at the time of his hearing, yet is capable of working. Similarly, a claimant might be working at the time of his hearing at a job not comparable to his usual coal mine work, yet be found able to do comparable work. It would thus appear that section 727.203(b)(2) rebuttal is normally considered after it is determined that section 727.203(b)(1) rebuttal is not available. We do not think the reverse is true, however. Having determined that the work the petitioner is *doing* is comparable to his usual mine work, it would appear redundant to also hold that the miner is *capable* of such work. That is true, at least under the facts here, where the claimant does not attack the finding of comparability but, rather, the conclusion as to what constitutes his usual mine work.

That being the case, we believe the claimant's challenge to the "usual work" conclusion cuts across both sections 727.203(b)(1) and (b)(2) rebuttal under the facts here. As to both rebuttals, the ALJ's conclusions were premised on Bowling's last mine work as a roof bolter qualifying as his usual mine work.

### III.

We now turn to the issue of whether the Secretary was justified in concluding that Bowling's last two years of mine work as a bolt cutter may properly be deemed his "usual" mine work.

Our starting point in this analysis is 30 U.S.C. § 902(f)(1)(A) & (B). These sections provide in relevant part:

(A) in the case of a living miner, ... a miner shall be considered totally disabled when pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time;

(B) ... in the case of a living miner, if there are changed circumstances of employment indicative of reduced ability to perform his or her usual coal mine work, such miner's employment in a mine shall not be used as conclusive evidence that the miner is not totally disabled[.]

We glean from these sections that, in deciding what was a claimant's usual mine work, the work had to be performed "regularly" and "over a substantial period of time." Further, it cannot be "favored" work; that is, work designed to accommodate an already debilitated miner. Beyond this, neither the statute nor the regulations provide additional definitional help. It would appear that no universal rule can be formulated, and this question has to be answered on a case-by-case basis.

Our task is made somewhat easier in this case because of two factors. First, Bowling worked at a variety of jobs in the mines, some more difficult or strenuous and some less difficult or strenuous than his job as a roof bolter. For example, Bowling worked for five years on a tipple, which is a button-pushing job.

Second, although Bowling faults the ALJ's conclusion as to what constituted his usual work, he offers no alternative from his other mine jobs nor does he specify why his work as a roof bolter was not "usual" or at least typical. To the degree that we can read into Bowling's argument that being a roof bolter was not his most strenuous mine work, we would reply by indicat-

ing the Board has rejected the concept that a miner's most arduous past work should be construed to be his "usual" work. *Freeman v. Old Ben Coal Co.*, 3 Black Lung Rep. (MB) 1–599 (Ben.Rev.Bd.1981).

In *Freeman*, the Board not only rejected the "most arduous" concept, but also approved of the decisions of two federal courts[3] that a miner's most recent work is his usual work if it was regularly performed over a substantial period of time. This would appear to bring us full circle and require us to examine what is meant by "regularity" and "substantial period of time."

There can be little doubt that Bowling's work as a roof bolter was performed with regularity. It was his full-time job to which he was permanently assigned, and he worked at it eight hours a day, five days a week. We will not try to define any bright line rule for "substantial period of time," but would conclude here, given the variety of different jobs that Bowling did in the mines, that a two-year period would qualify.[4]

Given our limited scope of review, *Director, OWCP v. Quarto Mining Co.*, 901 F.2d 532 (6th Cir.1990), and the deference that we accord the Secretary in the area of statutory interpretation, we are convinced that the Board's decision was proper.

AFFIRMED.

---

**3.** *Felthager v. Weinberger*, 529 F.2d 130 (10th Cir.1976), and *Lawson v. Weinberger*, 401 F.Supp. 403 (W.D.Va.1975). The Board added the further qualification that the work could not be "favored" work.

**4.** There is certainly nothing magic about the two-year period, however. If, for example, a miner had worked for 18 years at a very arduous underground job and spent his last two years at a desk job, we would be hard pressed to classify the desk job as the usual mine work.